## LOUISVILLE, NEW ORLEANS AND TEXAS R. R. Co. *v.* PATRICK CONROY.

1. RAILROAD COMPANY. *Whether engineer and contractor's laborer are fellow-servants.  Case in judgment.*

     M. contracted with a railroad company to do certain grading for it.  The company furnished an engineer and a train to move the dirt.  The engineer was engaged and paid by the company, and was under its control and direction, except that M. gave the signals when the train was to move.  While such train was being run under the exclusive management of the engineer, except in the particular just indicated, it ran over a cow, was thrown from the track, and C., a laborer employed by M. to throw dirt to and from the train, was injured.  *Held*, that the engineer, being the servant of the railroad company, was not a fellow-servant with C., and an action by the latter against the railroad company for the injury thus sustained cannot be defeated by the defense that the plaintiff and the engineer were fellow-servants.

2. SAME. *Negligence of servant.  Dangerous employment of person injured.*

     Nor can the defendant, in such case, escape liability on the ground that the plaintiff, at the time of receiving the injury complained of, being engaged in a service known by him to be dangerous, thereby assumed the risks incident to such service.  Dangerous occupations demand correlatively greater care on the part of all persons engaged in them.  But if one so engaged be injured by the negligence of the servant of a master not freed from liability therefor by some contractual relation, such master cannot avoid responsibility because the injured person was knowingly engaged in a dangerous employment.

3. SAME. *Fellow-servant.  What constitutes.*

     Those only are fellow-servants who serve the same employer and are subject to the same control.  Persons engaged in a common pursuit are not necessarily fellow-servants.

4. SAME. *Injury caused person by striking cow.  Burden of proof.*

     In an action against a railroad company for an injury to the plaintiff occasioned by a train striking a cow, after the plaintiff has proven the injury and the cause thereof, (the cause being such as ordinarily exists only by reason of the negligence on the part of the company,) it devolves upon the defendant to show that the striking of the cow was not the result of the negligence of its servants.  *Chicago, St. Louis and New Orleans Railroad Company* v. *Trotter*, 60 Miss. 442, cited.

5. SAME. *Action against.  Proper instruction on inapplicable statute.*

     And the giving of an instruction in such case, which properly states the law

as to the burden of proof, is not erroneous because apparently based upon a statute (§ 1059, Code 1880) not applicable to the case.

APPEAL from the Circuit Court of Warren County.

HON. RALPH NORTH, Judge.

This is an action for damages brought by Patrick Conroy against the Louisville, New Orleans and Texas R. R. Co. for a personal injury alleged to have been occasioned by the negligent manner in which defendant's servant, an engineer, ran its train. The jury found for the plaintiff and assessed the damages at one hundred dollars. From the verdict on such judgment the defendant appealed.

The second instruction for the plaintiff was as follows : " Proof by the plaintiff of injury inflicted on him by the running of the locomotive or cars of the defendant company is *prima facie* evidence of the want of reasonable care and skill on the part of the servants of such company in reference to such injury, and will entitle the plaintiff to recover unless the defendant shall, by a preponderance of the evidence offered by it, show to the satisfaction of the jury that there was no lack of reasonable care or skill on its part, or on the part of its employees."

The further facts necessary to a proper understanding of the case are stated in the opinion of the court.

*Murray F. Smith*, for the appellant.

1. The second instruction asked by the plaintiff is in the language of, and is based upon, § 1059, Code 1880.

This court, in *Railroad Co.* v. *Trotter*, 60 Miss. 442, held that this statute did not apply to persons who held contractual relations with a railroad.

The gist of that decision is, that this statute was intended to apply to a class of cases that experience had demonstrated the necessity of providing some remedy for, viz.: that class of cases in which damage occurs by the running of trains, and in which there were no presumptions at all against the company, and therefore the whole burden of proof rested upon the plaintiff, such as the killing of stock and the injury of persons upon the tracks of railroads.

This class of cases usually happen when no other witnesses than employees of the railroad company are present, and hence the necessity of the statute.

The plaintiff was a passenger at the time of accident in the sense that he was not a mere trespasser. He was aboard the train by virtue of a contract between defendant and J. P. McDonald, plaintiff's employer. He was, while riding upon this train, attending to the business of his employer.

2. It is not pretended that any other person than the engineer was negligent. If, therefore, he and plaintiff were fellow-servants plaintiff should not recover.

The attorney of plaintiff relies upon the decision of this court in the case of *Railroad. Company* v. *Norwood,* 62 Miss. 565.

That case simply decided that the engineer in charge of the train was the employee of the company. The question is here, Was he fellow-employee with plaintiff?

Thompson, in his work on Negligence, page 1026, defines fellow-servant as follows: " All who serve the same master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow-servants."

The engineer can with truth be said to come within each of these limitations, with reference to some in a qualified sense, and in others to the full extent.

At the time of the accident he was serving McDonald. He was working under his control, was managing the train by his directions and by his orders. McDonald paid him as well as the plaintiff. Plaintiff and the engineer were engaged in the same general business. See the following cases : *Johnson* v. *Boston,* 118 Mass. 114 ; *Wiggett* v. *Fox,* 11 Exch. 832 ; *Railroad Co.* v. *Cox,* 21 Ill. 20 ; *Hawkins* v. *Standard Sugar Refining Co.,* 122 Mass. 400 ; *Murray* v. *Curry,* L. R. 6 C. P. 24 and 28.

*McCabe & Anderson,* for the appellee.

1st. Was the engineer a servant of McDonald & Co. or of the appellant company ?

2d. Was the appellee a co-employee with the engineer?

The settlement of the first proposition virtually settles the whole question here propounded, and this identical point and the identical contract herein set out between McDonald and the appellant was adjudicated and settled in 62 Miss., wherein the supreme court declared the engineer to be a servant of the railway company, and not of McDonald. *N. O., B. R., V. & M. R. R. Co.* v. *Norwood*, 62 Miss. 565.

In that case this court very properly adopts the following tests as conclusively fixing the existence of the relations mentioned : " (1) The right of selecting the servant; (2) the right to discharge the servant; (3) the right to control the servant; (4) that he is not a master who is interested in the ultimate result of the work done as a whole, but not in the details of its performance;" two of which tests, at least, determine the engineer to be the servant of appellant, and not of McDonald. But the question is so firmly settled in the case cited that we might as well argue that *white* is *white* and *black* is *black*.

As we stated above, this virtually settles the *second* proposition, viz. : Whether or not appellee was a co-employee with Isgrigg, the engineer. But outside of the above-cited authority we desire to lay down the principle for determining when persons are co-employees or fellow-servants, as enunciated by some of the American courts. First as to our own courts :

" Those are fellow-servants who are co-working in the same common enterprise, under the same master, and compensated by him. Differences in wages and work do not affect the question if the general business is the same." See *N. O., J., etc., R. R. Co.* v. *Hughes*, 49 Miss. 258.

2d. " Those who are engaged in the service of the same master in carrying on and conducting the same general business, in which the usual instrumentalities are employed, may justly be called fellow-servants." *Valtz* v. *O. & M. Ry. Co.*, 85 Ill. 500. See also *Young* v. *N. Y. C. R. R. Co.*, 30 Barbour (N. Y.) 229, and especially *Burke* v. *N. & W. R. R. Co.*, 34 Conn. 474.

In the case at bar, there can be no doubt that the engineer, Is-

grigg, was an employee of the appellant; that McDonald & Co. were independent contractors with appellant, and that appellee was an employee of McDonald & Co., and was not, therefore, a co-employee with or fellow-servant of Isgrigg, the engineer.

The *second instruction* asked by appellee is in the language and sustained by Code of 1880, § 1059, and approved by 62 Miss. 170, 383, and 503, etc.

We therefore submit appellee's instructions to the consideration of the court.

COOPER, C. J., delivered the opinion of the court.

In *Railroad Company* v. *Norwood*, 62 Miss. 565, we held the engineer to be the servant of the railroad company, though the train in his charge was at the time of the injury sued for in the service of an independent contractor who was doing certain work in the details of which the company had no interest. In that case the controversy was between the railroad company and a citizen, whose mule had been killed by the negligent running of the train, and liability was fixed upon the company. In the case now before us the question is as to the liability of the company for an injury inflicted by the negligence of the engineer upon a laborer employed by the contractor, and who at the time of the injury was in the prosecution of the work for which he had been engaged.

It appears from the statement of McDonald, the contractor, that he had made a contract with the company to excavate a certain cut on its line of road, for which it was to pay him at the rate of sixty cents per cubic yard of earth removed, and in addition was to furnish him with a construction train of twenty cars and an engineer to manage the same. This train was required by the company to be upon the side-track fifteen minutes before the schedule time of each of its trains, and was prohibited by its written orders from running at a greater rate of speed than fifteen miles per hour. The full measure of the contractor's control over the engineer and train, as stated by him, was that "when the train was loaded with dirt, my foreman, Shea, gave a signal, and the engineer pulled the train out to the place of deposit, and when the laborers had thrown

the dirt off the signal was repeated and the train was backed down to the works. The rate of speed at which the train went or came was something with which I had nothing to do, and did not try to control; that was controlled by the company in the manner indicated. The engineer was selected by the company, and it alone had the right to discharge him. It paid him his wages, but charged them up to me and deducted the amount from the sum due me. I had the right to complain of the engineer, and the company, if it saw fit, might substitute another, but was not bound to do so." The appellee was one of many laborers employed by the contractor and paid by him. Their duty was to load the cars with the excavated earth and to go with it to the place at which it was to be deposited and unload the train. The train in one of its trips was being backed at a rate of from twelve to fifteen or twenty miles per hour, and ran over a cow, which resulted in several cars being thrown from the track, and the plaintiff, being on one of them, received the injury to recover for which this suit is brought.

The appellant denies responsibility on the ground that the engineer was a fellow-servant with the plaintiff, who is, therefore, precluded from recovering for an injury arising from his negligence, and upon the further ground that having engaged in a dangerous service, known to be such, he assumed the risk incident to it, and *volenti fit non injuria.* The correctness of the decision in *R. R.* v. *Norwood* is not challenged by the appellant, but reliance is placed upon a class of decisions, few in number, in which it seems to be held that the servants of an independent contractor and those of his principal, if engaged in a common work, are as between themselves fellow-servants within the rule which denies recourse against the principal for an injury resulting from the negligence of his servant.

This seems to be the established doctrine in Massachusetts. *Johnson* v. *City of Boston,* 118 Mass. 114; *Harkins* v. *Standard Co.,* 122 Mass. 400. It is difficult to determine just what was decided in the case of *Cox* v. *R. R. Co.,* 21 Ill., relied on by appellant, or the ground upon which the decision was made. In that case the company had contracted with Bennett & Scott to deliver a

certain quantity of wood at various stations along its line.  Plaintiff's intestate was employed by the contractors to assist in loading and unloading the cars by which the wood was to be transported, and a part of the wood having been so placed on a car as to project over its side, it struck against the cars of another train, and the intestate was thrown from the car with the wood and killed.  The car carrying the wood was a part of a train under the charge of a conductor and engineer furnished by the company.

The court in one part of its opinion says : " We shall consider for the purposes of this case that all the parties, as well Bennett & Scott as their hired hands, were employees of the company.  We consider it as proved that all persons on the train were employed by the company in the same service."  If the facts warranted this, the case is in harmony with the general current of authorities on the subject.  But again, the court found as a fact that the accident was caused " by the unskillful manner in which the wood was loaded upon the cars, in doing which the deceased was an actor."  If this was true, the company was not liable, because the negligence was not that of their servant, the engineer, but of the deceased and his colaborers.  But the court, continuing, reversed its position and declared that " all the hands hired by Bennett & Scott, who were *contractors* to furnish the wood, *and who had control of the engine and train*, were engaged in the same business," etc, thus indicating that the engineer and the laborers were fellow-servants to the contractors, and if they were the company was not liable, because the engineer was not its servant.

But the doctrine of the Massachusetts court is supported in its fullest extent by the case of *Wiggett* v. *Fox*, 11 Ex. Rep. 832.  In that case the plaintiff's intestate had been injured by the negligence of the servant of a principal contractor, he himself being in the service of a sub-contractor and engaged in work on the same building.  The court, by Alderson, B., said : " Here both the servants were, at the time of the injury, doing the common work of the contractors, the defendants, and we think that the sub-contractor and all his servants must be considered as being, for this

purpose, the servants of the defendants whilst engaged in doing work, each devoting his attention to the work necessary for the completion of the whole, and working together for that purpose." It was also said, " here the workman comes into the place to do work knowingly and avowedly with others. The workman, as was suggested in *Priesly* v. *Fowler*, may, if he thinks fit, decline any service in which he apprehends injury to himself, and in cases in which danger is to be apprehended he is just as likely, probably more so, to be acquainted with the risks he runs than the common employer would be." It would seem, therefore, that *Wiggett* v. *Fox* determines that the servants of two independent contractors engaged in the same common work are *inter se* fellow-servants, and also that one who engages in dangerous work cannot recover from the master for the negligence of his servant engaged in the same general work. But in *Abraham* v. *Reynolds*, 5 Exchequer 142, Martin, B., said he had consented to the judgment in *Wiggett* v. *Fox* because the person by whom the deceased had been engaged was not an independent contractor, but he and the deceased and the person by whom the injury was inflicted were all servants of the defendants.

In *Abraham* v. *Reynolds*, the plaintiff, a servant of J. & Co., who were employed by the defendants to carry cotton from a warehouse, was receiving the cotton into his lorry when, in consequence of the negligence of the defendants' porters in lowering the bales from the upper floor, a bale fell upon him, and it was held that the plaintiff and the defendants' servants not being under the same control or forming part of the same establishment, were not so employed upon a common object as to deprive the plaintiff of an action against the defendants. Stress was laid by the judges upon the fact that the servants, though engaged in a common work, were not under the same control or subject to the same orders.

In *Murray* v. *Currie*, L. R. 6 C. P. 24, a stevedore employed by the defendant to unload a ship was held to be an independent contractor, and a laborer employed by him having been injured by the negligence of one of the crew, who had also been employed by the stevedore and was subject to his entire control and to be dis-

charged by him, the defendant, the shipowner, was held not liable. The ground of this decision was that the negligent servant was not the servant of the defendant at all, and nothing was said of exemption from liability because of the dangerous character of the service in which the plaintiff had engaged.

*Woodley* v. *The Metropolitan Railway Co.*, 2 Exch. Div. Law Rep. 384, and *Swainson* v. *Northeastern Railway Co.*, 3 Exch. Div. Law Rep. 341, illustrate the diversity of views entertained by the English judges upon this difficult question. In the former case the facts were that the plaintiff, a workman, was engaged by an independent contractor to work in a dark tunnel through which the trains of the defendant passed every six minutes. The tunnel was just large enough to permit the laborers to avoid the passing trains by pressing against its walls, and the laborers could not see an approaching train until it came within twenty or thirty yards of them. The company failed to station a guard to warn the workmen of approaching trains, and the plaintiff was injured by one which came on rapidly and failed to sound the whistle or give any notice of its approach. In the lower court, Kelly, C. B., and Amphlett, B., thought the company liable, while Cleasby, B., doubted its liability on the ground that the plaintiff, knowing the dangerous character of the work, had nevertheless engaged and continued in it. On appeal, Cockburn, C. J., Mellor and Gore, JJ., agreed in reversing the judgment, while Melish, L. J., and Baggalay, J. A., were in favor of affirmance. The reason given for the reversal was that the plaintiff, having knowledge of the danger of the service, contracted with reference to it and assumed all the risk involved, while Melish and Baggalay, JJ., thought there was liability if the servants of the company through their negligence caused the injury which would not otherwise have happened. *Swainson* v. *Railway* was decided in the year following. In that case the plaintiff's husband was engaged as a signalman by the Great Northern Railway Company and wore its uniform; he served at a station jointly used by the Great Northern and the Northeastern Railways, and by arrangement between the companies his wages were paid by both; as between the two companies he was a

member of "the joint station staff." It was, however, his duty to attend to the Northeastern trains as well as the Great Northern as to points and signals when any engines or trucks were to be transferred from the rails of one company to those of the other. The circumstances of the injury as stated in the opinion were as follows: "On the 7th of May, 1875, Swainson, in the discharge of his duty, was standing on the six-foot space between the Great Northern arrival and the Northeastern departure lines. A Northeastern engine came toward the station on the Great Northern arrival rails with some Great Northern coal trucks, and Swainson signaled to the driver to go on the Northeastern departure line. The driver obeyed and went on to that line until he had passed some points, when he reversed his engine and backed out again, having a van before his engine which obscured his view of the line. Swainson was then looking in the other direction, watching a train coming from the south, and failing to observe the engine and van coming, he was struck by the step of the van, knocked down, and killed." Under these facts it was unanimously held that the defendant was liable for the negligence of the engineer. The decision is put upon the ground that Swainson was not the servant of the defendant company, nor at the instant of the killing engaged in doing anything for it, and because he was not its servant it was held that an action could be maintained. It is not intimated in the opinion that Swainson, by engaging in the business known to be hazardous, had assumed all risk of accident incident to it, and yet that was the ground of the decision in denying liability in *Woodley* v. *Railway*, decided the preceding year.

We have reviewed these cases to show the want of unanimity of the judges by whom they were decided and the reasons given by those who assert non-responsibility by the master for the negligence of his servant. We repudiate the proposition that one engaged in a dangerous occupation, known to him to be such, may not recover for an injury negligently inflicted by the servant of another engaged in the same work. It must be admitted that the general rule is responsibility by the master for the negligence of his servant in the performance of his work from which injury re-

sults to another.  This liability does not arise from contract, but springs from a breach of that duty which each member of the community owes to each other member.  It may, it is true, be limited by contract, and where one enters into the service of another the contract of service is held to imply a release under certain circumstances of responsibility by the master for the negligence of fellow-servants.

But what room is there for the application of this rule as between parties who do not stand in any contractual relation ?  Or why should a fanciful and imaginary contract be made and supplied by the courts to relieve from liability ?    That an occupation is dangerous does not make it unlawful ; nor is negligence lawful because occurring in a dangerous enterprise.  If my business calls me to cross a dangerously crowded street, the circumstances under which I am placed demand a greater care and the exercise of greater watchfulness to avoid danger, failing in which I may be denied an action against another who has also been guilty of the same negligence.  But suppose I do exercise all the prudence which my situation requires ?   Shall I then, who am innocent, be ridden down by one who is negligent, and when appealing to the law for redress be answered that I took the chances of injury ?  And if I may recover against the person by whom the injury is inflicted, why may I not hold to a like responsibility him whose servant inflicted it?   It devolves upon those who advance this view to show some rule of law which relieves the master of the negligent servant, and if any such rule exists it has not been pointed out in a single case to which we have been referred.  We understand the law to be that one who engages in a dangerous enterprise assumes the risk of such injuries as he may receive, provided they are not caused by the negligent, and therefore unlawful, act of another.  But dangerous occupations demand a correlatively greater care on the part of all persons engaged in them, and one guilty of a want of that care which the law imposes on him, and resulting in injury to an innocent person, cannot escape the obligation of making reparation to the innocent by showing that the service in which he was engaged was in itself of a dangerous

character, for *non constat* that the injury would have resulted in the dangerous service if the defendant himself had used that care which the very danger required him to observe. But it is said, by engaging in a common work the servants of the employer and those of an independent contractor, or the servants of two independent contractors, become fellow-servants. This is a pure, simple, and arbitrary assertion; a fanciful doctrine, invented to subserve some supposed public policy or to limit the operation of a well-recognized rule which judges have thought in particular cases it would result in some hardship to enforce. Suppose the plaintiff, Conroy, had gone to the defendant company and said to it: "Your engineer is a careless and negligent man; I am unwilling to serve with him, and I ask you to discharge him"? Would not the reply have been, "We have nothing to do with you; we did not engage you; we cannot discharge you; you are not liable under any contract to us; we are not responsible for you nor to you"? The plaintiff would then have gone to McDonald, who had employed him, and made the same complaint. McDonald would have replied, and properly: "I have nothing to do with the engineer; I did not select him; I cannot discharge him; I do not control him; I am not responsible for him." The relationship seems to begin just where the master invokes it for his protection, and ends just where the servant invokes it for his. It has no foundation in justice, reason, or the analogies of the law; it screens the guilty and denies to the innocent reparation for unlawful injury. We decline to adopt it, and declare our adherence to the well-settled rule that they only are fellow-servants who serve the same employer and are subject to the same control. Thompson on Negligence, p. 1040, § 41, and authorities cited.

The second instruction given for the plaintiff is substantially correct. It is true, our statute, Code of 1880, § 1059, does not apply, and it is probable the instruction was intended to announce that it did. But it is undoubtedly true that the accident resulted from a collision with a cow, and that being so, it devolved on the company to show the collision to have been without negligence on the part of its servants. *R. R. Co.* v. *Trotter*, 60 Miss. 446; Hutch. on Car. 801. *Judgment affirmed.*