## HERCULES POWDER CO. *v.* HAMMACK.[*]

(Division A.   Dec. 13, 1926.)

[110 So. 676.   No. 26017.]

1. MASTER AND SERVANT. *Evidence held to show injury resulted from fellow servant's negligence, precluding recovery against employer.*
   Evidence, in an action for personal injuries, *held* to show that injuries resulted from negligence of fellow servant, precluding re-covery against employer; Hemingway's Code, section 6684, abolishing fellow-servant rule as to railroad operations, being inap-plicable.

2. MASTER AND SERVANT. *Law abolishing fellow-servant rule held in-applicable to corporations not operating' railroads described (Hemingway's Code, section 6684).*
   Hemingway's Code, section 6684, abolishing fellow-servant rule as to railroad operations and railroad employees, *held* inapplicable as to corporations not operating classes of railroads therein de-scribed.

[*]Corpus Juris-Cyc. References: Master and Servant, 39CJ, p. 655, n. 60; p. 1096, n. 60.   On validity of statute abrogating fellow-servant rule, see annotation in 12 L. R. A. (N. S.) 1040; 47 L. R. A. (N. S.) 114; 18 R. C. L. 771.   As to what constitutes operation of railroad under statutes abrogating fellow-servant rule for railroad see annota-tion in 1 L. R. A. (N. S.) 696.   18 R. C. L. 772.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by Charles Hammack against the Hercules Pow-der Company.   Judgment for plaintiff, and defendant ap-peals.   Reversed and judgment rendered.

*Hannah & Simrall* and *T. J. Wills,* for appellant.

The peremptory instructions requested by the appel-lant should have been granted.   The evidence discloses that the injury to the appellee resulted solely from his

own negligence or an unavoidable accident. Conceding for the sake of argument that the plaintiff's injury was caused by McLaurin's negligence, then his injury was the result of the negligence of a fellow-servant for which the master is not liable.

We think that the most that can be said for the plaintiff's case, and we do not think that this can be successfully urged, was that McLaurin might have assumed some authority over Hammack. A reference to the pages of the record will disclose that any assumption of authority by McLaurin over Hammack was made by Mc-Laurin without any authority or direction so to do from the defendant or any of its foremen. Conceding that McLaurin did so assume to exercise some authority over Hammack, then this case falls squarely within the rule announced by Judge Sykes in *Gulfport & Miss. Coast Traction Co.* v. *Faulk,* 118 Miss. 894, 80 So. 340.

But even if we go a step further and assume that Mc-Laurin was a sub-foreman over Hammack, then this case falls squarely within the rule announced in *Petroleum Iron Works* v. *Baily,* 124 Miss. 11, 86 So. 644, and the plaintiff still cannot recover.

When we view this case from another angle, we are again driven to the conclusion that the plaintiff cannot recover for the reason that he must be held to have assumed the risk of the very injury that he suffered. *Austin et al.* v. *M. & O. R. R. Co.,* 134 Miss. 226, 99 So. 3.

This case should be reversed and dismissed.

*Anderson & Anderson* and *John R. Tally,* for appellee.

Appellant contends that conceding for the sake of argument that the plaintiff's injury was caused by McLaurin's negligence, his injury was the result of the negligence of a fellow-servant, for which the master is not liable. This same contention was made in the case of *Hunter* v. *Ingram-Day Lbr. Co.,* 110 Miss. 744, and also in *J. J. Newman Lbr. Co.* v. *Irving,* 118 Miss. 59, with reference to

the loader man who was operating the steam loader, in which case it was contended that the men working around the steam skidder, and especially the tonger man in the woods, were fellow servants and the court held that they were not. It might as well be contended that a section foreman has no authority to direct or control the men who work under him. The appellee in the instant case was under as much obligation to obey the instructions of the tractor man as if the president of the company, himself, had been standing there directing him in the performance of his labor. Any servant who has authority to direct another employee with reference to his work, is the superior of the servant required to take the instruction.

Appellant contends in its brief that the plaintiff's injury resulted from one of the ordinary dangers of the work which the appellee assumed. We say that is a mistake.

This case should be affirmed.

*Hannah & Simrall* and *T. J. Wills,* in reply, for appellant.

Counsel for appellee make a desperate effort to demonstrate that Hammack and McLaurin, who was operating the tractor, were not fellow servants. An examination of the cases of *Hunter* v. *Ingram-Day Lbr. Co.*, 110 Miss. 744, 70 So. 901, and *Newman Lbr. Co.* v. *Irving,* 118 Miss. 59, 79 So. 2, cited by appellee, will reveal that no such questions were raised and that no such questions were decided by the court. Both of these cases turn on the question as to whether or not the Acts of 1908 abolish the fellow-servant doctrine applied to the skidders. In other words, in both of these cases it was expressly conceded that the parties were fellow-servants; but it was decided that inasmuch as the injuries were received in connection with the operation of railroads, the fellow-servant doctrine did not apply.

In other words, in both of these cases, it is expressly recognized that the tonger men and the operator of the skidder are fellow-servants, just as we have contended with reference to Hammack and the operator of the tractor. But the court held that the fellow-servant doctrine did not apply in these two cases because it had been abolished as to railroad employees. The appellee here does not enjoy this privilege and, therefore, does not fall within the exception.

Argued orally by *T. C. Hannah,* for appellant, and *John R. Tally,* for appellee.

McGowen, J., delivered the opinion of the court.

Appellee, Hammack, sued the Hercules Powder Company for damages for personal injuries sustained, and recovered in the court below in the sum of two thousand dollars.

The plaintiff testified in the court below that he was employed by Mr. Murray, who was employed by the Hercules Powder Company as general woods superintendent, and that he was told by Mr. Murray to resume the performance of duties which he had performed in the year before as "tonger," that he reported to Murray for work, and was ordered by Murray to report to Dean, who was the woods foreman, and that Dean pointed out Russell and told the plaintiff that there was the man he was to work under.

The plaintiff's proof tended to show that, while working with McLaurin, who succeeded Russell, it was their custom to go to the woods where the stumps had been left, and that he (Hammack) would put the cable over a stump and fasten it, the cable being attached to a "tractor" or "caterpillar," which was used to pull the stump from the ground; that, on the day he was injured, McLaurin "pulled up" this particular stump, and he attached the cable to it, whereupon the tractor was put in gear and

the stump was pulled from the ground before he had given the signal to begin pulling, and he was struck by a long root attached to the stump, which was violently jerked from the ground by the tractor, and he received serious injuries therefrom. The plaintiff said that it was his custom to attach to the cable the stump *selected by McLaurin,* and that it was the custom for the tractor not to be moved in the effort to pull the stump from the ground until he had withdrawn to a place of safety and had given the signal; that he was injured because McLaurin began the operation in pulling the stump from the ground before he had so withdrawn to a place of safety and had given the signal; that he had no authority to select ·the stump or otherwise direct the movements of the men who handled the tractor. He further said that the usual custom was that he gave the signal for the movement of the tractor in the pulling operation. The proof further showed that Edgar Robbins was the day crew foreman under whom Hammack and McLaurin were working.

There was, some contradiction in the evidence as to whether the signal was or was not given, or whether it was the custom to give it, but it is clear that these two men were in the woods together, one operating the tractor, and the other operating the cable as a "tonger," and, from the plaintiff's standpoint, the injuries received by him were the direct result of precipitated action and negligence of the tractor man, McLaurin, in pulling the stump by means of the tractor before he (Hammack) had given his signal and had withdrawn to a place of safety.

On the conclusion of the testimony, the defendant, the Hercules Powder Company, asked for a peremptory instruction, which was refused by the court. Appellant contends here that it was entitled to a peremptory instruction for three reasons: (1) Because the negligence, if any, which caused the injury to Hammack, was the negligence of the fellow servant, McLaurin, and not the negligence of the company; (2) that the evidence shows that

the injury resulted solely from Hammack's own negligence or was an unavoidable accident; and (3) that the plaintiff's injuries resulted from one of the dangers of the work plaintiff assumed to do.

In view of the conclusion we have reached, we shall consider only the first reason assigned for a peremptory instruction, as we are of the opinion that the court should have granted the peremptory instruction on the ground that, if it be assumed that Hammack received his injury because of McLaurin's negligence, such injury was the result of the negligence of the fellow servant for which the master, the Hercules Powder Company, was not liable. Counsel for appellee contend that this case is ruled by *Hunter* v. *Ingram-Day Lumber Co.,* 110 Miss. 744, 70 So. 901, and *J. J. Newman* v. *Irving,* 118 Miss. 59, 79 So. 2. In the latter case, Judge SYKES, as the organ of the court, said:

"The only question presented for our decision is whether or not section 1, chapter 194, of the Laws of 1908, which section abolished the fellow-servant doctrine with reference to employees covered by it, is applicable to this case. *If applicable, the appellee is entitled to recover; otherwise he would not be.*" (Italics ours.)

He then proceeds to set out the testimony in which it was shown that the appellant lumber company was operating a logging railroad upon which railroad engines and cars were run, propelled or operated by steam; that, in connection with this business it had a "skidder" which was controlled by a man and by use of levers; cables were run out into the woods from the skidder and pulled the logs from the woods to the skidder. When the cable reached the proper place in the woods, the tongs on the cable were attached to a log and the log pulled by the cable to the skidder. At the time, the appellee, Charley Irvin, had attached some tongs to a log which was being drawn to the skidder. Because of the negligence of the person operating the skidder, Irvin was injured. When this operation was being performed, the skidder pulling

the logs from the woods was anchored to the track, and was stationary during the operation. The cables were operated by steam. The court held further that it was necessary to the operation of the railroad for the logs to be brought to the railroad track, and concluded the opinion with the statement: "The appellee was injured while assisting in the operation of this skidder, and is protected by this act." To the same effect is an opinion rendered in the Ingram-Day Lumber Company, cited *supra*. In both of these cases it is apparent that the act abolishing "the fellow-servant rule" was held by the court to exempt the injured employee from the general rule applicable to fellow-servants. The act, above mentioned, (section 6684, Hemingway's Code), abolishes the fellow-servant rule as to railroad operations and railroad employees, but not as to corporations which do not operate the class of railroads therein described.

There is not a line or a word of testimony in this case which shows that the Hercules Powder Company, in any manner, operated any kind of railroad or that there was any kind of railroad operation being carried on by these two employees at the time Hammack received his injury. The most that can be said for plaintiff's testimony, viewing it as we do in the strongest possible light for Hammack, the appellee, is that he and McLaurin were fellow-servants, even though it might be said that McLaurin, the other servant, chose the stump to be pulled. It is equally clear that McLaurin was not to put the tractor in operation until the signal was given by Hammack. In the case of *McMaster* v. *Illinois Cent. R. R. Co.*, 65 Miss. 264, 4 So. 59, 7 Am. St. Rep. 653, Judge ARNOLD, as the organ of the court, said:

"If a brakeman on one train of a railroad company is the fellow-servant of the employees in charge of, or operating another train of the same company, on the same road, the declaration was demurrable.

"There is some diversity of authority as to who are fellow-servants, within the meaning of the rule which

exempts the master or employer from liability to those engaged in his employment, for injuries suffered by them, as the result of the negligence or misconduct of other servants employed by him and engaged in the same common business; but subjection to control and direction by the same common master, in the same common pursuit, furnishes the true test of coservice. When servants are employed and paid by the same master, and their duties are such as to bring them into such a relation that the negligence of the one in doing his work may injure the other in the performance of his, then they are engaged in the same common business, and, being subject to the control of the same master, they are fellow-servants, within the generally accepted meaning of the rule, no matter how different the grades of service or compensation may be, or how diverse or distinct their duties may be. 3 Wood's Railway Law, 1494 et seq.

"And, when the relation of fellow-servants is established, there can be no recovery from the common master or employer by one of them for an injury occasioned to him through the negligence or misconduct of his co-employee. In order to render the master liable in such case, it would be necessary to show that the negligent servant was incompetent, and that he was selected without reasonable care and prudence, or that he was continued in the employment after notice to the master of his unfitness, or that the master had failed to furnish adequate means and materials for the work. Such is the law of this state, and such is the law as it has generally prevailed in America and England for many years. *N. O., etc., R. R. Co.* v. *Hughes,* 49 Miss. 258; *Chicago, etc., R. R. Co.* v. *Doyle,* 60 Miss. 977; *L. N. O. & T. R. R. Co.* v. *Conroy,* 63 Miss. 562 [56 Am. Rep. 835]; *Randall* v. *Baltimore & O. R. R. Co.,* 109 U. S. 478 [3 S. Ct. 322, 27 L. Ed. 1003]; *Murray* v. *S. C. R. R. Co.* [1 McMul. (S. C.), 385], 36 Am. Dec. 268, and note; 3 Wood's Railway Law, 1494 et seq."

Judge ARNOLD further quoted from Chief Justice SHAW of the supreme court of Massachusetts in the case of *Farwell* v. *Boston & Worcester R. Corp.,* 4 Metc. (Mass.) 49, 38 Am. Dec. 339, as follows:

" 'The general rule resulting from considerations, as well of justice as of policy, is that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal presumption the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master. They are perils incident to the service, and which can be as distinctly foreseen and provided for in the rate of compensation as any other. To say that the master shall be responsible because the damage is caused by his agents, is assuming the very point which remains to be proved. They are his agents to some extent and for some purposes, but whether he is responsible in a particular case for their negligence is not decided by the single fact that they are, for some purposes, his agents. In considering the rights and obligations arising out of particular relations, it is competent for courts of justice to regard considerations of policy and general convenience, and to draw from them such rules as will, in their practical application, best promote the safety and security of all parties concerned. We are of opinion that there are such considerations which apply strongly to the case under discussion. When several persons are employed in the conduct of a common enterprise or undertaking, and the safety of each depends to a great extent on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neg-

lect of duty, and leave the service, if the common employer will not take such precautions and employ such agents as the safety of the whole party may require. By these means the safety of each will be much more effectually secured than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other. Regarding it in this light, it is the ordinary case of one sustaining an injury in the course of his employment, in which he must bear the loss himself, or seek his remedy, if he has any, against the actual wrongdoer.' "

The fellow-servant doctrine applies to this case, and, in our opinion, the facts in this case make it fall within the rule above quoted, as it likewise falls within the rule announced in the case of the *Petroleum Iron Works* v. *Bailey,* 124 Miss. 11, 86 So. 644, as follows:

"The material testimony introduced by the plaintiff was to the effect that he and some other employees of the appellant company were at work on the roof of a house. The appellee was fitting some pipes. He left his work temporarily, and upon his return made the remark that somebody had moved his pipe line. Mr. Daugherty, the man who committed the alleged assault, replied that nobody had moved the line, and told appellee that he did not know his business. One word brought on another, which resulted in a slight altercation between these two men. There was another Daugherty present at the time of the difficulty, who is a brother of this one. The plaintiff testified that the Daugherty who committed the assault upon him was a sort of foreman over him, and that he was subject to his orders; that the other Daugherty was general foreman and had entire charge of this work. The general foreman took no part in the difficulty, except to separate the men. Under this testimony, the peremptory instruction requested by the defendant in the court below should have been given. In this case the fellow-servant rule applies, and these two men were fellow-servants."

It follows that we think the lower court erred in not granting the defendant the peremptory instruction asked for.

Reversed, and judgment for appellant.

*Reversed.*