## Gwin *v.* Carter.

(Division B. Sept. 22, 1930.)

[130 So. 597. No. 28718.]

Stevens & Heidelberg, of Hattiesburg, for appellant.

Currie & Currie, of Hattiesburg, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the county court of Forrest county, to recover damages in the sum of one thousand dollars for an injury received by appellee while in the employ of appellant, alleged to have been caused by the latter's negligence. The trial in the county court resulted in a judgment in appellee's favor in the sum of one thousand dollars; from that judgment appellant appealed to the circuit court of Forrest county, wherein the judgment of the county court was affirmed. From the judgment of affirmance appellant prosecuted this appeal.

The evidence on behalf of appellee made the following case: Appellant, doing business under the name of Gwin Construction Company, was engaged in constructing the Forrest Hotel at Hattiesburg. Appellee was one of appellant's employees, and was working under Joe Halphin, one of appellant's foremen. Appellee was stationed on the seventh floor of the building, engaged in removing loaded wheelbarrows from the elevator, unloading them, and placing them back on the elevator, to be lowered to the ground floor for material. Appellant's foreman, Halphin, as were all of his other foremen was engaged in the construction of the hotel, was under the control and direction of appellant's general superintendent, H. L. Guinn, but appellee, at the time of his injury was working under Halphin, who had the right to direct and control the manner in which the work should be done.

Halphin gave appellee orders as to the manner of unloading and replacing the wheelbarrow on the elevator. Halphin claimed that appellee was disobeying his orders in that respect, and for that reason cursed him, and struck him on the nose with his fist, breaking his nose.

Appellant contends that the court erred in refusing to direct a verdict in his favor, upon the ground that the fellow-servant doctrine applied, relieving appellant from responsibility for the appellee's injury. Appellant's position is that in committing the assault and battery on the appellee Halphin was not representing his master, but was acting for himself alone, and therefore the injury was that of a fellow-servant, and not of the master.

There has been a good deal of controversy and disagreement among the courts as to the basis of the master's liability for the acts or omissions of his foremen, and other superior servants. A majority of the courts are agreed that for some acts of the superior the master may be held liable; and all the courts agree, it appears, that the master is not liable for every such negligent act or omission. In a few instances mere superiority of rank has been accepted as the criterion in determining the master's liability, but the propriety of this has been very generally controverted. The courts generally hold that liability for the acts of the superior "is founded upon the power of control or direction with which the master has clothed the actor. And many express powers—as for example that of employing and discharging inferiors—have been specified as criteria for determining whether the master has designated the sort and degree of authority that will render him liable." 18 R. C. L. 743, section 215. But the fundamental consideration in determining the liability of the master for the act of his managing servant is the nature and character of the power of control, direction, and superintendence with which the master has clothed the actor. "An increasingly large number of cases emphasizes this fact, or declares in terms

that where the master confers upon another power to control, direct and superintend the persons who are engaged in the business, the director or superintendent, or whatever he may be termed, becomes the master's representative, for whose acts and omissions the master or employer is accountable. He is not a fellow-servant within the fellow-servant doctrine." 18 R. C. L. 748, section 218.

"Generally speaking, the decision as to whether the rule is to be applied depends on whether or not the so-called superior servant has the authority to superintend or control the injured servant, and not merely on the grade or rank of the so-called superior servant." 39 C. J. 574-576, section 691.

Appellant relies on Givens v. So. R. Co., 94 Miss. 830, 49 So. 180, 22 L. R. A. (N. S.) 971; Petroleum Iron Works v. Bailey, 124 Miss. 11, 86 So. 644; Lagrone v. M. & O. R. Co., 67 Miss. 592, 7 So. 432; Hercules Powder Co. v. Hammack, 145 Miss. 304, 110 So. 676. We do not think either of those cases sustain appellant's contention.

In the Givens case the plaintiff's injury was caused by the negligence of a section foreman, who had no supervision or control whatever over the plaintiff, who was engaged in another department of railroad work. He was a member of the bridge gang.

In the Petroleum Iron Works case the plaintiff was fitting some pipes. He left his work temporarily, and upon his return made the remark that somebody had moved his pipe line. He was thereupon assaulted by one Daugherty, who stated that nobody had moved the pipe line, and told the plaintiff that he did not know his business. A brother of Daugherty was present at the time— he was the general foreman. The plaintiff testified that the brother who committed the assault upon him "was a sort of foreman over him, and that he was subject to his orders." We are unable to see that this case has any application to the question here. Daugherty, the foreman, was not representing his master; he was not undertaking

to direct and control the manner in which the plaintiff should do his work; the assault resulted simply from a controversy between Daugherty and the plaintiff as to whether the pipe line plaintiff was working on had been moved in his absence.

In the Lagrone case Edwards was a section foreman on the railroad, while Lagrone was a section hand under him. The section foreman had full control of the work, and authority to hire and discharge the laborers under him. Lagrone received the injury complained of while holding a fish bar which the section master was attempting to straighten, in order that it might be used to replace one that was found to be broken. Lagrone's hand was crushed and permanently injured through the negligence of the section master. Lagrone was holding the fish bar while the section master was striking it with a heavy instrument. The injury was caused by the negligence of the section master in striking the fish bar. It is plain, therefore, that the section master, at the time Lagrone was injured, was simply a coworker with Lagrone. The injury was the result of the negligent manner in which the section master performed his part of the work. His negligence, therefore, was not the act of a superior and directing employee, representing the master, but was simply that of a coemployee.

The Hercules Powder Company case is not in point for the same reason. The plaintiff in that case was injured by the negligence of his woods foreman as a coworker, not as the representative of the master. The plaintiff and the woods foreman were pulling stumps from the ground; the woods foreman attached a cable to the stump to be pulled, and put the tractor in gear, and pulled the stump from the ground before giving any signal that the pulling was to begin. The result was that the plaintiff was struck by a large root attached to the stump, which was violently jerked from the ground by the tractor. The fact that the person whose negligence

caused plaintiff's injury was the master's woods foreman had no relation whatever to the character of the act which caused the injury.

Alden Mills et al. v. Pendergraft, 149 Miss. 595, 115 So. 713, relied on by appellee, is nearer in point than any of the cases cited in the briefs. That was a case of an assault by the master's foreman on one of its employees. The evidence showed that the foreman had charge of the employment, control, and discharge of the master's servants; and tended to show that the assault was committed by the foreman for the purpose of intimidating the servants, and thereby prevent them from demanding any increase in wages. The court held, under that state of facts, that the act of the foreman was the act of the master, for which the latter was liable.

In the case at bar the undisputed evidence showed that the appellee was injured, not as the result of the wrong of appellant's foreman, Halphin, in his capacity as a coworker with appellee, but as a result of the foreman's effort to control the manner in which appellee should do the work. The foreman assaulted appellee because he charged that the work was being done by the appellee in an improper manner. Without hesitation we hold that in committing the assault the foreman was acting for the master, and not in the capacity of a fellow servant.

Appellant complains of four instructions granted appellee, principally on the ground that they used the words, "foreman" and "vice-principal" as having the same meaning. In these four instructions the court told the jury, in substance, that, if the evidence showed that Halphin was foreman or vice-principal of appellant, with authority to control and direct appellee's labors, and assaulted and struck appellee in reference to a matter connected with or growing out of, appellant's business, and in furtherance thereof, and pertaining to appellee's labors, and thereby inflicted injuries upon the appellee, then they should find a verdict for the appellee. We think

these instructions embodied correct principles of law. It was entirely immaterial whether Halphin bore the name of foreman or vice-principal. The controlling consideration was whether or not he had the right to direct and control the manner in which appellee should perform his labors. If he had that authority, then he represented and acted for the master, and not in the capacity of a co-worker.

Appellant criticizes the instructions for appellee on other grounds. There appears to be so little merit in these criticisms that we do not feel called upon to discuss them, except to say that instructions given for appellee, as pieced out by those given for the appellant, put the whole applicable law to the jury. They could not have been misled by any imperfection in any one of the instructions, if there were such imperfections.

They contend that the verdict was excessive. We do not think one thousand dollars is an excessive verdict for a broken nose.

Affirmed.