PAN AMERICAN PETROLEUM CORPORATION *et al. v.* PATE.

(Division B.   Dec. 7, 1931.)

[138 So. 349.   No. 29470.]

See, also, 157 Miss. 822, 126 So. 480; 128 So. 870.

Wells, Jones, Wells & Lipscomb, of Jackson, Lloyd J. Cobb, of New Orleans, La., Friday & Windham, of Booneville, and E. C. Sharp, of Jackson, for appellant.

643

J. A. Cunningham, Floyd W. Cunningham, Lacey & Lacey and J. E. Cunningham, all of Booneville, for appellee.

Argued orally by J. A. Cunningham, for appellee.

Ethridge, P. J., delivered the opinion of the court.

This is the second appeal in this case; a former appeal being reported in 157 Miss. 822, 126 So. 480; 128 So. 870, where a statement of the facts as they then existed is set forth, and no further statement of them will be made here. The case was remanded in the former opin-

ion for assessment of damages only; the judgment of liability being affirmed.

In the former opinion we held that liability was sufficiently established, and when the case was remanded the evidence was limited to the question of the amount and character of the damages. The court gave the following instruction for the plaintiff: "The court charges the jury for the plaintiff that it has already been adjudicated that the defendants are liable to the plaintiff, Dexter Pate, for negligently bringing about this explosion which injured him; therefore the court now charges you that it is your sworn duty under the law to bring in a verdict against the defendants for such sum as will from a preponderance of the evidence fully compensate the plaintiff for his injuries caused by said explosion, including any and all physical and mental pain and suffering endured up to the present time, or which he may reasonably be expected to suffer in the future as a proximate result of said injuries, and also for any and all loss of earning capacity which he may be reasonably expected to sustain on account of any physical or mental impairment during his life from and after his majority. And any nine of you agreeing on the amount may bring the same in as the verdict of the jury."

It is earnestly insisted that this instruction is erroneous in that it authorizes the jury to allow damages for mental suffering after physical suffering had ceased. We do not think this instruction is susceptible to that construction. When the case was here before, practically the same instruction was asked and given, which also contained the additional statement, "and also for any humiliation or embarrassment that he has or may reasonably be expected from the proof to endure on account of his scars or deformed condition." This last matter was the part of the instruction condemned in the former opinion. The instruction as given in the present case does not contemplate allowing damages for

mental suffering after physical suffering has ceased. It allows for physical and mental suffering endured to the present time or which he may reasonably be expected to suffer in the future as a proximate result, etc. There is testimony in the case that the plaintiff still suffers from his injuries, and from the testimony as a whole we think the jury could infer that he would continue so to suffer; at least it was for the jury on the evidence to decide whether there would be suffering in the future or not, and, if so, the extent of its duration, intensity, etc.

In Bonelli et al. v. Branciere, 127 Miss. 556, 90 So. 245, 248, the court, in closing the opinion, said: ''This view does not militate against the principle, well established in the jurisprudence of this state, that there may be a recovery for mental pain and humiliation growing out of and accompanied with physical injury. We simply hold that when the physical suffering is at an end there can be no recovery for mental suffering or humiliation which may thereafter continue as the result of the physical disfigurement of body.''

If the appellants desired to clear up and make certain that the jury would not consider mental pain or humiliation endured after the physical pain had ceased, they could have procured an instruction to that effect. We do not think, however, that the instruction as written would convey to the jurors' minds that the jury could allow for mental suffering unless accompanied by physical suffering. The two are grouped together in the usual and customary manner of getting instructions along this line.

It is true that there was much testimony for the appellants which tended to show that there would be no permanent physical suffering, but there was other evidence that would warrant the jury in believing that there would be, and it was for the jury to decide the issue of fact thus raised in the evidence.

The second assignment of error argued in the brief is that the court erred in the adverse rulings made upon appellants' objection to the argument of counsel for appellee, as appears in the special bill of exceptions contained in the record, and in overruling appellants' motion for discharge of the jury, and the entry of a mistrial because of such argument. The argument, as contained in the record, does not appear to be a consecutive and continued argument, but appears to us to be a report of fragments of the argument; to certain parts of the argument the court sustained objections, and to other parts overruled objections. While it appears that the court reporter took down the argument of counsel for the appellee, it does not appear that the part complained of was a connected and consistent argument, but that it was fragmentary and disconnected, and it is difficult to say that it was improper, at least to the extent that would warrant this court in reversing a judgment because thereof. We are reluctant to reverse judgments because of arguments made by counsel; the jury being usually practical men of sound judgment and good character, is capable of understanding that attorneys presenting their arguments will argue favorably for their clients, and the statements of attorneys in argument are not usually given unusual weight by the jury in determining the issue; at least there is nothing in the record that would lead us to believe that the jury was influenced unduly by the argument. At all events, after a careful consideration of the portion of the argument set forth in the bill of exceptions, we are unable to hold that the trial court, who heard it and who was in a better position to fully understand the argument in connection with the case than we are, erred in overruling it.

After the trial there was a motion for a new trial, in which it was contended that certain jurors were not qualified electors because they had not paid their taxes on or before the first day of February of the year in

which they were serving. The trial took place during the month of February, and it appeared that some of the jurors had not paid their taxes. Some of them had been listed with checks filed with the sheriff in blank to be filled in and collected by the sheriff, and these were left with the sheriff in the latter days of January, but he had not checked up and filled in and cashed the checks at the time of the trial. Under section 264 of the state Constitution it is expressly provided that the failure of a juror to possess the qualifications therein named, which are that he must be a qualified elector able to read and write, would not vitiate any verdict or indictment. We do not think there is any reason for reversal of the judgment under the facts contained in the record upon that proposition.

It was also contended in the motion for a new trial that certain of the jurors were indebted to a certain bank, and that the officers of the bank were in attendance on the court and conferring with counsel for the plaintiff during the selection of the jury, and that the leading counsel for the plaintiff was indebted to the bank; it being alleged that the interest of the said attorney in a recovery of the suit was a contingent fee of fifty per cent. of the recovery which had been assigned to the bank as security for debt. The evidence showed that there had been no assignment of the claim, and also showed that the bankers were not specially interested in the matter and were only in the courtroom during a portion of the period in which the jury was being impaneled. It did appear that some of the jurors were indebted to the bank. We know of no method by which bankers can be prohibited from appearing in court; court trials being public and bankers being free citizens as other men. Nor do we find any ground for holding that an attorney cannot confer with a banker with reference to the fairness and impartiality of prospective jurors. It is customary for attorneys, when in doubt

as to the fairness, competency, and other matters affecting jurors, to confer with their friends. We cannot presume jurors would commit perjury or violate their duties as jurors to please a creditor, especially where there is no effort on the part of the creditor to induce them so to do. We find no reversible error in overruling the motion for a new trial.

It is insisted here and in the motion for a new trial that the verdict of twenty thousand dollars was excessive to the extent that it indicated passion and prejudice. The proof shows that the plaintiff, a child, was permanently injured, and that it would never develop into a normal man, and would probably never have any earning ability or capacity, and it would be necessary, probably, for him to have some person throughout his life to accompany and look after him wherever he might be, to prevent him injuring himself due to the impairment of his physical and mental faculties and with his inability under excitement to control his movements, because of which he was liable to run 'into anything. It is argued that, inasmuch as the child is only seven or eight years old, and is due to be supported by his parents until he is twenty-one, the recovery would have to be invested at interest and the interest compounded during this period of time, and, when so compounded, the award would be so excessive as to his actual needs as to leave the principal sum unimpaired at his death at the end of a normal expectancy. We do not think this argument is sound. The child is a child of poor parents, who may not be able to properly support and educate him or to give him proper medical attention during his minority, or who might die prior to his attaining his majority. Under the law the guardian of a minor may, with the permission of the chancery court, in proper cases, spend part of the corpus of an estate for the use and benefit of a minor. We cannot anticipate that there will be no necessity for so doing, or that the needs of the child in

its physical and mental condition would not probably require a considerable expenditure during the minority. We would hesitate to hold that twenty thousand dollars was an excessive verdict under the facts produced by the plaintiff, assuming them to be true, as the jury found they were true. We therefore must affirm the judgment of the court below.

Affirmed.