### GULF REFINING CO. *v.* NATIONS.

(Division B. Jan. 16, 1933. Suggestion of Error Overruled Feb. 27, 1933.)

[145 So. 327. No. 30313.]

316

318

322

Rawls & Hathorn, of Columbia, for appellant.

M. S. McNeil, of Hazlehurst, and R. L. Jones, of Brookhaven, for appellee.

Briefs of counsel not found.

Argued orally by Claude B. Hathorn, for appellant, and by R. L. Jones, for appellee.

**Anderson, J.,** after stating the case as above, delivered the opinion of the court.

It will be observed from the contract that appellant owned and controlled the business to the following extent: It owned the plant and storage facilities and stock of goods kept on hand for sale, the office furniture and equipment, except the typewriters and adding machine, and all the means of carrying on the business, except the necessary help and the delivery trucks, which were furnished by Wilkins. Going more into detail, appellant had the right to fix the size and kind of storage facilities, the amount of gasoline and other products kept in stock, the prices at which the stock should be sold by Wilkins, the persons to whom credit should be extended, and the terms upon which it should be extended. It had the right to control the proceeds of sale. Wilkins was required to remit daily all money collected by him for cash sales. His commissions were to be paid as soon as practicable after the first day of each month. The contract was not assignable; it could be terminated by either party on ten days' written notice. He was required to make daily written statements to appellant showing sales and deliveries, together with signed receipts or bills of lading for credit sales. He was to be responsible for all stocks and containers shipped to him. On the last day of each month he was required to transmit to appellant a detailed statement of all transfers or sales of stock and show containers on hand. Appellant had the right to change the price of products from time to time. Wilkins was required to ship stock in his possession anywhere else when directed by appellant. He was required to carry compensation and public liability insurance for himself and his employees. Upon termination of the contract he was required forthwith to deliver the warehouse, storage facilities, and all stock to appellant. The evidence showed that appellant required its name to ap-

pear in some way on the insurance policies provided for in the contract (how and where appearing indefinite from the record). Appellant required Wilkins to make his daily remittances to it in New York Exchange and furnished the forms and blanks used in carrying on the business. Appellant's name appeared on a sign over the warehouse where the business was carried on. All credit sales were charged by appellant itself to the purchaser, and remittances therefor were made direct to appellant.

The provisions of the contract principally relied upon as constituting Wilkins an independent contractor are paragraphs 7 and 8, which provided, in substance, that Wilkins should have entire charge of the management and operation of the business and pay all license fees and furnish all necessary equipment, drayage, trucks, and tank wagons, and his own helpers and employees, and pay all expenses of conducting the business, appellant in no event to be responsible for the negligence of Wilkins nor his employees in conducting the business; and that neither Wilkins nor his helpers should be deemed or construed as employees of appellant.

We are of the opinion that Kisner v. Jackson, 159 Miss. 424, 132 So. 90, 91; Caver v. Eggerton, 157 Miss. 88, 127 So. 727, 728; Pan-Am. Pet. Corp'n v. Plate, 157 Miss. 822, 126 So. 480, 128 So. 870, and Southern Express Co. v. Brown, 67 Miss. 260, 7 So. 318, 319, 8 So. 425, 19 Am. St. Rep. 306, are more nearly in point than any of the other authorities cited in the briefs. In the Kisner case the owner of a sawmill and equipment leased the plant to be operated as a spoke and sawmill. The contract provided that the lessee should manufacture timber into such size and dimensions as might be desired by the lessor, and to deliver the same to the railroad at the point of shipment desired, at such price as might be agreed upon, and required the lessor to furnish the lessee money for the latter's pay roll, the same to be changed to the lessee and deducted from the amount due him

under the lease contract. The contract expressly provided that the lessor should in no manner be liable for any wages or hire of any employees engaged in the operation of the business, and in no way liable for any damages or injuries resulting from the operation thereof. The court held, under the facts of that case, that the alleged lessee was not an independent contractor. In discussing that question the court said: ''There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees. These are the tests, as we think, and any other, if differently stated, may be brought within one of those above briefly set out. 14 R. C. L., pp. 67-76; 31 C. J., pp. 473-475; 39 C. J., pp. 1316-1323.''

In the Caver case the court in discussing whether the employee, Givens, was a servant or an independent

contractor, used this language: "The fact that the employee uses and maintains his own means of conveyance in said work and selects his own route is not controlling."

In a good many respects the case at bar is similar to the Pate case on its facts. The court held in that case that the fact that the petroleum company required Brown to carry liability insurance upon his truck, operated in the business, had a bearing on the question whether Brown was an agent of the petroleum company or an independent contractor.

In the Southern Express Company case the court, discussing this question, quoted and approved this language from the Supreme Court of Massachusetts in Kimball v. Cushman, 103 Mass. 194, 4 Am. Rep. 528: " 'The fact that there is an intermediate party, in whose general employment the person whose acts are in question is engaged, does not prevent the principal from being held liable for the negligent conduct of his subagent or underservant, unless the relation of such intermediate party to the subject-matter of the business in which the underservant is engaged be such as to give him exclusive control of the manner and means of its accomplishment, and exclusive direction of the persons employed therefor.' "

In the conduct of the business, what independence did Wilkins have? By the plain terms of the contract, as well as under the construction put upon it by the parties, the appellant was to furnish and control everything in the business, except the trucks and tanks, and the necessary help for the sale and delivery of the products, which Wilkins was to furnish. He deemed the commission he was receiving from appellant sufficient for that purpose, and to reasonably compensate him for his time and services. It is true that he fixed the compensation of his helpers, and paid them for their services; but he paid them of course, out of the commissions he received from appellant. Appellant, however, had equally as large a

power over Wilkins' helpers as had Wilkins, for under the contract appellant had a right to cancel it for any cause it deemed sufficient. That right, of course, necessarily carried with it, if exercised, the discharge of Wilkins and all of his employees.

In view of the other provisions of the contract, that provision in the seventh paragraph that Wilkins should furnish all the necessary drays, trucks, and tank wagons, and all helpers and employees, and pay all expenses of conducting the business, has very little bearing on the question as to whether he was appellant's agent or an independent contractor. The provision in the contract that appellant should not be responsible for the negligence of Wilkins, nor any of his employees, in conducting the business, of course, could have no binding force on such employees. A like provision was in the contract in the Kisner case.

It is often a very elusive question whether a person under a given state of facts is an agent or an independent contractor. The authorities cited in the briefs in this case demonstrate that fact. There are cases cited by appellant from other jurisdictions that would probably justify a reversal of this judgment. We think, however, the decisions of our court, above referred to, declare a better rule. Although different in their facts, we are unable to distinguish this case from them on principle. By the terms of the contract it appears that appellant tried to make Wilkins an independent contractor and at the same time retain complete control of the business. This cannot be done under the law.

Appellant contends that there is no liability on its part because appellee and Bentz, who committed the assault and battery upon appellee, were fellow servants. The assault and battery was committed in the absence of Wilkins. The evidence showed that in Wilkins' absence Bentz had charge of the office and the conduct of the business. He had the right to direct the services of

appellee. Bentz was the alter ego of appellant in Wilkins' absence. In such case the negligence of Bentz was the negligence of appellant. Gwin v. Carter, 158 Miss. 196, 129 So. 597.

Affirmed.