Hart, J.,
 

 dissenting. I regret that I am unable to concur in the majority opinion and the judgments in these cases. Vicarious liability, whereby one becomes liable for the tortious acts of another, arises only where the tort-feasor stands in the relation of agent with authority to act for, or is under obligation to indemnify, the party made vicariously liable. To create the relationship of partners or joint adventurers there must exist mutual agency between the parties or joint
 
 *155
 
 adventurers. That means that each joint adventurer is a principal with power of direction and control as to the joint adventure, andas such each of the other joint adventurers is his agent within the scope of the enterprise in which they are all engaged. There must be such relationship as .a predicate for tortious liability against one who did not actively and actually engage in the tortious act. This rule is well expressed in 38 American Jurisprudence, 924, Section 237, as follows:
 

 “Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there is a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management. ’ ’
 
 Illingworth
 
 v.
 
 Maden, Jr.,
 
 135 Me., 159, 192 A., 273, 110 A. L. R., 1090;
 
 Darman
 
 v.
 
 Zilch,
 
 56 R. I., 413, 186 A., 21, 110 A. L. R., 826;
 
 Fox
 
 v.
 
 Lavender,
 
 89 Utah, 115, 56 P. (2d), 1049, 109 A. L. R., 105;
 
 Campbell
 
 v.
 
 Campbell,
 
 104 Vt, 468, 162 A., 379, 85 A. L. R., 626;
 
 Atlas Realty Co.
 
 v.
 
 Galt,
 
 153 Md., 586, 139 A., 285.
 

 To make Sinclair liable for the negligence of Varnes, it need only be shown that Varnes was the agent of Sinclair in the operation of the truck, but if there was joint liability because of joint adventure, the evidence must also show that the contract relationship made Sinclair the agent of Varnes. Their relationship must be such that if Sinclair, purporting to furnish kerosene to Varnes for sale and delivery, had, in fact, without the knowledge of Varnes, furnished kerosene mixed with gasoline which would explode at abnormal temperatures, and it did so explode, doing damage to person or property, Varnes would be liable for such damage because Sinclair, as a member of the joint adventure in preparing and delivering the kerosene, was the agent of Varnes. Clearly it was not in the contempla
 
 *156
 
 tion of the parties or within the terras of their contract to make Varnes liable in damages for any tortious act of Sinclair under such circumstances. Of course, Varnes would be individually liable for the negligent acts of Yoder, his agent, in driving the truck.
 

 The undisputed evidence shows that under the contract between Sinclair and Zimmerman, the distributor, the latter was obliged to hire and pay his own delivery agents. He did hire Varnes and Varnes was paid by Zimmerman by splitting commissions with Varnes on sales made by the latter in Zimmerman’s territory. In turn, Varnes, on his own responsibility, selected and. hired the driver of the truck and paid him out of Varnes’ share of the commissions. It also appears that Varnes owned two filling stations which he leased to Sinclair for a fixed money rental; that the tank on the truck in question was furnished by Sinclair to Zimmerman’s bulk station and was there turned over to Varnes to put on his truck; and that the truck carried some advertising signs or emblems which indicated that it was engaged in the delivery of Sinclair products, but these facts are indicia consistent with the relationship of agency rather than that of joint adventure.
 

 There is no evidence that Sinclair agreed or was obliged to furnish the tank for the truck or that its use was in fulfillment of any joint adventure relationship between Sinclair and Varnes. . The tank was evidently loaned to Varnes for use in his work, but in any event it did not enter into the determination of the earnings due to either party. There was no mutual sharing of losses or agreement to do so in the event of loss. Varnes took the loss on anything above the credit rating of the customers as fixed by Sinclair, and Sinclair took the loss for anything below that rating.
 

 In my judgment, the facts developed by the evidence do not establish joint adventure as it must exist to create tort liability, but only the relationship of agency.
 
 *157
 
 Clearly, Zimmerman was the agent of Sinclair and Varnés the agent of Zimmerman, and possibly the sub-agent of Sinclair. The essential element of mutual agency necessary to create a joint adventure as between Sinclair and Varnes, in my opinion, is lacking.
 

 The annotation editor of American Law Reports, in discussing the legal consequences of a relationship equivalent to that here involved, says (116 A. L. R., 462):
 

 “It appears to be a common practice of the large corporations engaged in the business of producing, refining, and marketing petroleum products, to establish local wholesale or ‘tank-wagon’ stations in charge of a local ‘agent,’ ‘commission agent,’ or similar agent under a written contract or ‘agency agreement’ com-’ monly providing that the company shall furnish a stock of gasoline, oils, greases, etc. (and, in some instances, the building, tanks, etc., comprising the ‘station’) to be sold by the ‘agent’ at prices set by the company (and to remain the property of the company until sold), for cash or on credit authorized by the company, over a specified territory. Such agreements are commonly nonassignable, ‘ subject to termination by either party upon a few days’ notice, and provide for daily reports of sales and daily remittances of money received from cash sales and credit slips, and monthly reports or statements of stock on hand, from the ‘agent’ to the company, in return for which the ‘-agent’ receives a specified monthly ‘commission’ on all goods sold. In addition, these agreements commonly provide that the ‘agent’ shall have entire charge of the operation and management of the business of the station, pay all license fees, furnish all except specified equipment, including trucks, tank wagons, etc., furnish his own assistants at his own expense, and pay the expenses of conducting the business; that the company’s signs, trademarks, etc., shall be placed on the buildings,
 
 *158
 
 trucks, tank wagons, etc.; that the ‘agent’ and his employees shall not be deemed employees of the company, which shall not in any event be liable for the negligence of the ‘agent’ or his employees in the conduct of the business, and that the ‘agent’ carry compensation, public liability, etc., insurance for himself and his employees, and agree to indemnify the company against •all claims arising from acts or omissions of himself or his employees in the conduct of the business.
 

 “In numerous cases (generally actions by the injured party or owner of the damaged property against the oil company) the question has arisen as to whether the operator of such a ‘tank-wagon’ or wholesale station, under a contract of the type outlined * * * is a ‘servant’.or ‘employee’ of the oil company, so as to make it responsible for personal injuries or property damage resulting-from the tort of the operator of the station
 
 or Ms
 
 employee; and in the majority of such cases-it has been held that such operator is a ‘servant’ or ‘ employee ’ of the oil company, rather than an ‘ independent contractor’ as is commonly contended by the company, generally on the theory that although the terms of the written contract might indicate that the operator had the status of an ‘independent contractor,’ the company in actual practice retained such power to subject him and his employees to its will and direction that he was in fact a ‘servant,’ ‘employee,’ or ‘agent,’ for whose torts
 
 (and those of his employees)
 
 the company was responsible. This was the result reached in the following cases, under contracts generally of the type outlined,
 
 supra
 
 * *
 
 *" Riggs
 
 v.
 
 Standard Oil Co.,
 
 130 F., 199;
 
 Gulf Refining Co.
 
 v.
 
 Brown,
 
 93 F. (2d), 870, 116 A. L. R., 449;
 
 Magnolia Petroleum Co.
 
 v.
 
 Johnson,
 
 149 Ark., 553, 233 S. W., 680;
 
 Pan-American Petroleum Co.
 
 v.
 
 Pate,
 
 157 Miss., 822, 126 So., 480;
 
 Gulf Refining Co.
 
 v.
 
 Nations,
 
 167 Miss., 315, 145 So., 327;
 
 Buchholz
 
 v.
 
 Standard Oil Co.,
 
 211 Mo. App., 397, 244
 
 *159
 
 S. W., 973;
 
 Cholet
 
 v.
 
 Phillips Petroleum Co.
 
 (Mo. App.), 71 S. W. (2d), 799;
 
 Magnolia Petroleum Co.
 
 v.
 
 Pierce,
 
 132 Okla., 167, 269 P., 1076, 61 A. L. R., 218;
 
 Gulf Refining Co. of Louisiana
 
 v.
 
 Huffman & Weakley,
 
 155 Tenn., 580, 297 S. W., 199;
 
 Gibson
 
 v.
 
 Texas Co.
 
 (Tex. Civ. App.), 20 S. W. (2d), 349.
 

 Prom the cases above cited, the conclusion must be reached that under the circumstances of this case, the liability of the parties is governed by the law of agency and not that of joint adventure. Therefore, the court had no jurisdiction of Yarnes in Summit county. His motion to quash service of summons upon him should have been granted and the judgments in these cases against both Sinclair and Yarnes should be reversed with a remand for a new trial as to the defendant Sinclair.
 

 Matthias and Zimmerman, JJ., concur in the foregoing dissenting opinion.