LEVINE *v.* STANDARD OIL COMPANY, INC., IN KENTUCKY

No. 43043          May 4, 1964          163 So. 2d 750

*Rushing & Guice,* Biloxi, for appellant.

*William E. Suddath, Jr., Watkins & Eager,* Jackson, for appellee.

ETHRIDGE, J.

■■ ■ This case involves the question of whether an oil company, which produces and distributes gasoline and related products, is liable in tort for injuries suffered by a customer at a filling station owned by the company, but leased by it to a person who operated it under the lease as his own business. We hold the oil company is not liable under the present facts for negligence of the operator-lessee.

Bellman M. Levine, appellant, brought this action in the Circuit Court of Harrison County against Howard E. Hearon, Milton Smith, and appellee Standard Oil Company, Inc. in Kentucky (called Standard Oil). At the end of plaintiff's evidence, the trial court gave a peremptory instruction for Standard Oil. This appeal is from that decision. Subsequently the jury returned a verdict against Hearon, the lessee and operator of the filling station, and his employee, Smith, and they have not appealed.

On August 23, 1960 Levine, having trouble with the tires on one of his trucks, took it to a Standard Oil Service Station in Biloxi (operated by Hearon) to have them fixed. On the next morning two of the tires were flat, and he returned. Smith undertook to force the tire off of the wheel by beating it with a hammer. The tire exploded, causing the split rim to fly loose and strike plaintiff, inflicting substantial injuries upon him.

About five years before this date, Hearon leased the service station from its owner, Standard Oil. The lease ran from month to month, with either party having a right to cancel on ten days notice. Hearon agreed to pay as rental $115 a month, plus one-eighth cent per gallon on all petroleum products purchased and received by lessee. He agreed to pay all license fees, taxes, and utility bills; to keep the filling station property in clean, safe and sanitary condition; and not to assign the lease without written consent of lessor. Before its execution,

Hearon arranged for the purchase of tools and inventory on the premises from Sumrall, the previous operator and lessee, for $1200. Beech, the Standard Oil agent in Biloxi, did not participate in making these arrangements. Hearon operated the station until January 1, 1963, when he terminated the lease, and sold his inventory and tools to Sumrall.

It is undisputed that Standard Oil's representatives did not control or supervise this station, but that the lessee was his own manager. Beech gave Hearon no instructions on how to operate it. Hearon determined how many days per week and the hours to remain open. He operated seven days a week, while other Standard Oil stations in the area operated only six. Hearon paid his own utility and tax bills, and hired his own employees. He paid their wages and social security taxes. His employees wore uniforms, upon which there was a patch "Standard Oil", but these were rented by Hearon from a laundry in Gulfport. Hearon purchased gasoline from Standard Oil at wholesale prices and paid cash for it. This price was set by Standard Oil, but the retail price was fixed by Hearon, who also set his own prices for washing, greasing, fixing flats and motor oil. On occasions he sold motor oil, tires, batteries, accessories, and seat covers distributed or produced by others than Standard Oil. Profit and losses from the business were his. He received no salary or commission from Standard Oil. The filling station had in front a large "Standard Oil" sign, and there were other Standard Oil advertisements on the gas tanks (leased from Standard Oil) and other parts of the premises. The general construction and appearance of the station were similar to other old Standard Oil stations.

The circuit court correctly gave Standard Oil a peremptory instruction. Hearon was not an agent or employee of Standard Oil under these facts. He was an

independent contractor. Directly in point is Shell Petroleum Corp. v. Linham, 163 So. 839 (Miss. 1935). Shell leased to Young a filling station under terms substantially similar to the present lease. The court held that Shell was entitled to a peremptory instruction. The relationship of master and servant between Shell and Young did not exist, but Young was an independent contractor. Kisner v. Jackson, 159 Miss. 424, 132 So. 90 (1931); Texas Co. v. Mills, 171 Miss. 231, 156 So. 866 (1934). Shell did not have control of the operation of the filling station in any substantial respect, and, it was said, the power of either party to terminate the lease at will "standing alone, is not a controlling element." See Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880, 885 (1939) (citing Linham with approval); Masonite Corp. v. Stevens, 201 Miss. 876, 30 So. 2d 77, 79 (1947); Rothrock v. Roberson, 214 N. C. 26, 197 S. E. 568 (1938); Cities Serv. Oil Co. v. Kindt, 200 Okla. 64, 190 P. 2d 1007, 1012 (1948); Lollar v. East Miss. Oil Co., Inc., 234 Miss. 295, 106 So. 2d 65, 66 (1958).

The presence of "Standard Oil" signs and similar emblems on the uniform of the station attendants was not sufficient to establish an agency relationship. The operator (Hearon) was the lessee. The evidence showed that the lessor practiced no control over him. In other words, Standard Oil neither exercised nor retained control over the operation of the filling station, which was leased to Hearon. Hence it was not liable for the negligent acts of the operator or his employee. There is an apparent division of authorities on this issue. Most of them are discussed in the annotations in 116 A.L.R. 457, 470-476 (1938), and 83 A.L.R. 2d 1282, 1292, 1303 (1962), entitled "Status of Gasoline and Oil Distributor or Dealer as Agent, Employee, Independent Contractor, or Independent Dealer as Regards Responsibility for Injury to Person or Damage to Property." However,

*Linham* and related cases apply here. See 24 Am. Jur., Gasoline Stations, § 20; 61 C.J.S., Motor Vehicles, § 777.

The most significant facts are the lease, actual operations under it, and the lack of contractual right to control. Against these are only the right to cancel the lease on notice, and institutional advertising, which enures to the benefit of the lessee as well as lessor. The latter are consistent with good business practices and are common in the American community. They are of little weight in determining the operator's legal status. The instant facts reflect his substantial independence. No one is or can be wholly independent in an economic sense. The juristic line between independent contractor and agent must be drawn by evaluating the above factors in terms of the factual relations of the parties. The evidence here reflects that independence characteristic of the classic notion of an independent contractor. Moreover, a contrary result, urged by appellant, would upset without any sound reason the foundations of innumerable business relationships.

Affirmed.

*Lee, C. J., and Gillespie, McElroy and Brady, JJ.,* concur.