516 So.2d 231 (1987)
Minnie L. ELDER
v.
SEARS, ROEBUCK & CO. & Robert Bates.
No. 57120.
Supreme Court of Mississippi.
November 25, 1987.
Charles Victor McTeer, Willie L. Bailey, John Ackerly, McTeer & Bailey, Greenville, for appellant.
Paul J. Delcambre, Jr., Page, Minnino & Peresich, Biloxi, William C. Trotter, III, Belzoni, for appellees.
En Banc:

ON PETITION FOR REHEARING
PRATHER, Justice, for the Court:
This is a premises liability suit filed by Minnie L. Elder for a slip and fall accident at a Sears, Roebuck & Company catalogue store against both Sears and its authorized catalogue merchant, Robert Bates. Sears denied that an agency relationship existed with its catalogue merchant and asserted that the merchant had control of the premises. After a jury verdict against Sears alone, the Circuit Judge of Humphreys County set aside the verdict, holding that as a matter of law, the evidence established that Bates was an independent contractor. Elder appeals the setting aside of her jury verdict, and Sears cross-appeals on other grounds.

I.
In September, 1982, Sears, Roebuck & Co. (hereinafter Sears) entered into a Sears authorized merchants agreement with Robert *232 Bates (hereinafter Bates), who was to own and operate the Sears catalog store in Belzoni, Mississippi. The building in which the store was located was leased by Bates from Jerry Holbrook. Sears owned no interest in the building. Two signs owned by Sears, bearing the insignia of Sears, identified Bates as a Sears authorized catalogue merchant of the store. One sign was prominently displayed on the outside over the entrance of the store and another was behind the service counter. Various items of Sears brand merchandise was offered for sale in the store. In the back of the building were a number of used items which Bates offered for sale to the public. This merchandise did not belong to Sears.
At approximately 4:30 p.m. on January 14, 1982, Minnie Elder entered the Sears store owned and operated by Bates to make a payment on her Sears charge account. The customer service counter was located on the wall opposite the entrance with merchandise displayed to the right and left of the entrance doors. The main aisle down the center of the store led directly to the customer service counter. As Mrs. Elder entered the store, she turned to the left and began to walk in the area of the appliances. According to Mrs. Elder, she walked there because the main aisle was being mopped by employees of Bates. However, according to employees, no one was mopping the floor when Mrs. Elder entered. As Mrs. Elder turned into the area where the floor had been mopped the employees warned her that the floor was wet. She responded that she was wearing rubber sole shoes, and she could walk safely. Mrs. Elder slipped and fell. The employees tried to help her, but she arose without their assistance and immediately left the store.
Later that evening Mrs. Elder went to her family physician for examination and treatment. He diagnosed her condition as contusion (or bruise) of the coccyx. Elder continued to seek medical assistance and saw several different physicians in Jackson and in the Delta, all of whom concurred with the diagnosis. She was treated conservatively with medication, but continued to complain of pain. No physician diagnosed her condition as permanent. A myelogram was performed and found to be normal. One treating physician was of the opinion that the myelogram was not necessary and that she could have returned to work in April following the accident, rather than waiting until October. Elder submitted medical bills approximating $2500 and proof of lost wages in the amount of $30,350.
Mrs. Elder filed suit against Sears and Bates for failing to maintain the floors of the store in a reasonably safe condition. Sears answered the suit alleging Bates to be an independent contractor and denied any vicarious liability.
At the close of Elder's evidence, Sears moved for directed verdict on the grounds that Bates was an independent contractor, that it had no control over the condition or the activities on the premises which led to the condition that caused Mrs. Elder to fall, and therefore, it was not vicariously liable for the injuries. The court overruled the motion. This motion was renewed at the close of all evidence but was again denied. After the jury verdict, the court entered its order of judgment notwithstanding the verdict and overruling the motion for new trial.

II.
Did the trial court err in finding that the evidence established no principal/agent relationship between Sears and Robert Bates?
Mrs. Elder asserts that the evidence presented an issue clearly within the province of the jury. To the contrary, Sears contends that the evidence in the trial indicated that Sears was not the owner, possessor or party in control of the premises operated by Bates. Therefore, when there is no control by the person or party who engages the independent contractor, then no vicarious liability for the tortious conduct of the independent contractor may be imputed to Sears as a matter of law.
[W]hen the facts pertaining to the existence or non-existence of an agency are conflicting, or conflicting inferences may *233 be drawn from the evidence, the question presented is one of fact for the jury, ... and even though the evidence is not full or satisfactory, it is the better practice to submit the question to the trier of fact. 3 Am.Jur.2d Agency § 372 (1986).
As held in Leaf River Forest Products v. Harrison, 392 So.2d 1138 (Miss. 1981) the contract on the issue of the legal relationship between the parties is relevant but other factors are to be considered.
[C]ourts must look at transactions in their actual character, piercing through the screen of technical attitudes to what are the realities, and must regard substance rather than formal similitudes.
Hederman v. Cox, 188 Miss. 21, 40, 193 So. 19, 24 (1940). In Kisner v. Jackson, 159 Miss. 424, 428-9, 132 So. 90 (1931), this Court delineated factors to be considered in determining whether one is an independent contractor or employee/agent.
There are several tests to be applied, the weight of each, and whether much or little, rising and falling in the scale as it may or may not be counterbalanced by one or more of the remaining tests, present in the particular case in hand. For this reason these tests cannot be stated in any precise order of importance, but they are as follows: Whether the principal master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; whether he has the right to prescribe and furnish the details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ and discharge the subemployees and to fix their compensation; and whether he is obliged to pay the wages of said employees... .
The evidence as to the contract established the following:
The merchant leases a store facility from which he solicits, orders and distributes merchandise through the Sears catalog. The merchant is required to advertise his relationship with Sears as "Robert Bates, Sears Authorized Catalog Merchant."
The merchant is required to display on the front of the store signs which read Sears Authorized Catalog Sales Merchant followed by the merchant's name.
Sears also provides window decals, signs, and display equipment which the merchant may use. Sears supplies its own order forms. The merchant may use order forms other than those furnished, provided they are mutually agreed upon by the merchant and Sears.
The merchant may engage in other business activities including other retail selling operations. However, the merchant may not conduct any other catalog sales business. If the merchant, along with his Sears catalog business, engages in some other form of retailing and includes such goods in his store, he is required to post signs indicating that such items are not part of his Sears merchant operation.
The merchant's income comes from a 10.5% commission on net Sears sales. Some merchants do extend their own credit or accept bank credit cards. The merchant may make sales through the Sears credit card. If the customer does not have a Sears credit account, his use of Sears credit must initially be approved by Sears.
The merchant may not locate his store outside the trade area defined by the contract, although he may solicit and receive orders from customers who live outside the area.
The merchant does not take title to the Sears merchandise he sells. Title passes directly from Sears to the customer when the customer receives the merchandise. The merchant is required to remit all cash received for Sears merchandise prior to the *234 close of business on the day following its receipt.
In addition to keeping his own books, the merchant must keep accurate records of receipts, disbursements and inventory of Sears merchandise. Sears reviews these records annually. In addition to his daily cash reports, the merchant reports his general sales of Sears merchandise on a weekly basis. No reports are submitted to Sears on the merchant's non-Sears activities.
Either party may terminate the agreement at the conclusion of its term by giving written notice at least 60 days before expiration. Either party may terminate the agreement promptly if any default under any of the terms and provisions of the agreement continues uncorrected for 30 days after written notice. If either party is delinquent in the payment of an indebtedness or monies provided for in the agreement, the agreement may be terminated on 30 days written notice. A merchant is delinquent if any sums owed to Sears are not paid to Sears by the close of the merchant's third regular business day following their receipt by the merchant.
Sears had a right of first refusal in the event that Bates decided to sell the store, but Bates could sell the business to anyone who met the contract qualifications for ownership if Sears chose not to purchase the store.
Sears requires the merchant to maintain his premises in a safe, clean and attractive condition in accordance with Sears standards of appearance.
The merchant is responsible for the payment of all license fees and local and state taxes with the exception of taxes on Sears merchandise present at merchant's store. Merchant must make all necessary withholdings and contributions for the payment of taxes and assessments which may be required for merchant and merchant's employees, including but not limited to Social Security, income taxes, and state and Federal unemployment compensation. The merchant will provide all store fixtures, business equipment, furnishings and office supplies. Merchant pays all costs and expenses relating to the operation of merchant's store including but not limited to rent, utilities, maintenance, insurance, and wages and any other employment expenses for any persons in the employ of the merchant.
Sears reserves the right to review the merchant's books and records and to inspect the premises at reasonable times to determine compliance with the terms and provisions of the agreement.
The merchant agrees to defend, hold harmless and indemnify Sears from and against any and all claims, actions, liabilities, losses and expenses expressly and specifically included but not limited to, unauthorized representation and misrepresentation, injury to or death of persons, claims for benefits under any worker's compensation law, or damage to property allegedly or actually suffered by any person or persons, and arising out of or incidental to any operations of merchant.
The merchant receives from Sears an annual customer fee service fee in the amount of $20.00 per month. This fee is in recognition of telephone calls and other communications made by merchant to correct irregularities attributable to Sears' handling of customer orders, credit inquiries, and other communications resulting from Sears' activities.
Comparing the contract between Sears and Bates to the tests set forth in Leaf River, supra, at 1142, it appears that Sears and Bates possessed the power to terminate the contract at will; Sears has the power to fix the prices of the goods sold and controls the manner and time of payment; Sears furnishes signs for advertisement but does not furnish the means and appliances for the work; Sears has no control of the premises; Sears does require that merchant maintain the premises in a safe, clean and attractive condition and retains the right to inspect the documentation of the merchant at reasonable times to determine compliance with the terms and provisions of the agreement; Sears has no right to direct the details of the manner in which the work is to be done; Sears exercises no right to employ and discharge *235 their employees or fix their compensation; and Sears pays no wages of Bates' employees.
Beyond this, the premises are arranged so that members of the consuming public think they are dealing with Sears. Insignia indicating "Sears" are prominently displayed. Sears, along with anyone of common sense, well knows that the volume and profitability of the business would be significantly less if the sign merely said "Robert Bates, Authorized Catalog Merchant". The Sears name supplies the magic that draws customers. Reliance is implied in the fact that customers such as Mrs. Elder come there to do business with Sears.
The Supreme Court of Wisconsin has held that virtually an identical contract and relationship between Sears and an authorized catalog sales merchant constituted sufficient evidence to sustain the determination that the agent was an employee rather than an independent contractor for purposes of determining the liability of Sears for unemployment compensation taxes. The court assumed that the applicable statute had the same meaning as the common law test, stating that the record clearly showed the controls that Sears exercised over the agent. Sears, Roebuck & Co. v. Dept. of Industry, 90 Wis.2d 736, 280 N.W.2d 240 (1979).
Sears relies upon Levine v. Standard Oil Co., Inc., in Kentucky, 249 Miss. 651, 163 So.2d 750 (1964), where the defendant, Standard Oil, was granted a peremptory instruction, and this Court affirmed. However, in Levine, it was undisputed that Standard Oil did not control or supervise the station where the plaintiff, Levine, was injured by a split rim which struck him because the tire on it exploded, due to the negligence of the lessee of the service station. Contrary to the instant case, the service station operator was his own manager, receiving no instructions on how to operate the station. He purchased gasoline at wholesale prices and paid cash for it. He set all his own retail prices. He sold oil, tires, batteries, accessories and seat covers not distributed or produced by Standard Oil. Bates sold some used appliances, but only in the back of the store, so that he personally had to take customers there. Further, Levine received no commission from Standard Oil.
Candor requires that we acknowledge that there are similarities between Levine and today's case. Of greater force is our recent decision in Hardy v. Brantley, 471 So.2d 358 (Miss. 1985). Hardy was in relevant part a suit against Hinds General Hospital for the negligence of its emergency room staff. Hinds General had a private contract with the physician quite similar to Sears' contract with Bates. Hinds General, like Sears here, held itself out as offering certain services to the public. Hinds General, like Sears in the case of Bates, put physicians in a position to deal with the public which had no knowledge of the private, "independent" contract. In these circumstances we held Hinds General liable for its physicians' torts. Hardy, 471 So.2d at 372. We reach a similar result here in the case of Sears and Bates. See also, Royal Oil Co., Inc. v. Wells, 500 So.2d 439, 447) (Miss. 1986).
Sears urges that Hardy and Royal Oil are distinguishable. Sears says those cases involved "active negligence or an intentional act by the person found to be the apparent agent". However, in this case, Bates' negligence in failing to keep the Sears Catalogue Sales store in a reasonably safe condition is legally analogous. The suggested distinction is one without any real difference.
Sears would have us think it has been caught totally by surprise by the suggestion that it has liability for Mrs. Elder's injuries. The facts belie the suggestion. Sears' contract with Bates contains an indemnity clause. That clause provides that, in the event of claims asserted for injury suffered by third persons arising out of or incidental to Bates' operations, Bates will hold Sears harmless for any liabilities, losses or expenses Sears may incur. The quick answer to Sears' charge that a decision against it would change the law is Sears has both contracted and common law indemnity rights against Bates. Nothing said here changes the rule that liability for failure to maintain premises in a reasonably safe condition falls ultimately upon *236 the one who actually owns, controls or possesses the premises.
It is this Court's opinion that due to the conflicting evidence, the jury could reasonably have found that Sears exercised sufficient control over Bates, that it should be vicariously liable for the negligence of Bates, who was acting as Sears' agent when Elder came into the store to pay her bill. This Court, therefore, concludes that the agency relationship was a question of fact for jury determination, and not a question of law. The facts were determined by the jury against Sears' position, and the record supports such a finding.[1] This Court reverses the trial judge's ruling on the setting aside of the verdict and reinstates same.
In view of this Court's holding, there is no need to address the appellant's arguments that the circuit court was without jurisdiction to consider the untimely motions for new trial and judgment notwithstanding the verdict and that the court was without authority to extend the time for filing post-judgment motions under Miss.R. Civ.P. 60(b). Further, this Court holds that the assignments of error on cross-appeal are without merit and do not warrant discussion.
PETITION FOR REHEARING DENIED; OPINION MODIFIED; REVERSED AND RENDERED ON DIRECT APPEAL; JURY VERDICT OF $65,000.00 REINSTATED. AFFIRMED ON CROSS-APPEAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Any private contractual arrangement between the principal, Sears, and its agent, Bates, limiting the principal's liability or the agent's authority ordinarily may not be enforced against a third party with no knowledge or reason to know of same. Royal Oil Co., Inc. v. Wells, 500 So.2d 439, 447 (Miss. 1986). Cf. Hardy v. Brantley, 471 So.2d 358, 369-74 (Miss. 1985) (where a hospital held itself out to the public as providing emergency services and so was vicariously liable even though under the contract, the emergency room physicians may be independent contractors).