IN THE COURT OF APPEALS
7/29/97
OF THE
STATE OF MISSISSIPPI

NO. 95-CC-00851 COA

PALLETS, INC. AND BITUMINOUS CASUALTY CORPORATION

APPELLANTS

v.

RAY WARREN, PEARL RIVER FOREST PRODUCTS, INC., GEORGIA CASUALTY AND SURETY COMPANY, AND GEORGIA-PACIFIC CORPORATION

APPELLEES

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. MIKE SMITH

COURT FROM WHICH APPEALED: WALTHALL COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANTS:

JOHN T. BALL

ATTORNEY FOR APPELLEE:

LARRY O. NORRIS

NATURE OF THE CASE: CLAIM FOR WORKERS' COMPENSATION BENEFITS

TRIAL COURT DISPOSITION: AFFIRMED COMMISSION'S FINDING THAT WARREN WAS EMPLOYEE OF PALLETS, INC., AND ITS AWARD OF PERMANENT DISABILITY BENEFITS

MOTION FOR REHEARING FILED:8/12/97

CERTIORARI FILED: 11/4/97

MANDATE ISSUED: 2/12/98

BEFORE THOMAS, P.J., COLEMAN, AND SOUTHWICK, JJ.

COLEMAN, J., FOR THE COURT:

On March 20, 1989, Ray Warren was paralyzed from the waist down when a falling tree pinned him against another tree while he worked directly for one Julius Hart as a sawyer cutting trees on Hart's logging crew. He filed a petition to controvert with the Mississippi Workers' Compensation Commission against Pallets, Inc. (Pallets). Later he filed an amended petition to controvert against both Pallets, Inc., and Pearl River Forest Products, Inc. (Pearl River). Still later Warren filed a second amended petition to controvert in which he added Georgia-Pacific to the other two employers, Pallets and Pearl River. After a hearing on the matter, the administrative judge found that Warren was an employee of Pallets when he was injured, and she ordered Pallets to pay permanent disability and medical benefits to Warren. The administrative judge denied Warren's claims for benefits against Pearl River and Georgia-Pacific. Pallets appealed the order of the administrative judge to the Workers' Compensation Commission, which affirmed the administrative judge's order. On Pallets' appeal of the Full Commission Order to the Circuit Court of Walthall County, that court affirmed the Full Commission Order. Nevertheless, because this Court finds that the Commission erred as a matter of law in finding that Ray Warren was an employee of Pallets, we reverse and render for Pallets and Bituminous Casualty Corporation. We affirm for Pearl River, Georgia Casualty and Surety Company, and Georgia Pacific.

## I. FACTS

Julius Hart was a logger who worked in and around Walthall County. Ray Warren had been working as a sawyer for Julius Hart's logging crew four months when he was rendered a paraplegic on Monday, March 20, 1989, by the impact of a tree that fell against and pinned him. The tree which pinned Warren caused a compression fracture and dislocated his spine at T-12; hence his paraplegia. In his testimony before the administrative judge, Warren described the event as follows:

It was a tree lodged in another one that was uprooted and laid over another tree, and I went to cut

them and so they just split up in -- one of them just split it up in pieces and hit me between -- and I didn't have nowhere to go.

The woods in which Warren was cutting trees was located on a twenty-acre parcel of land located on the Louisiana-Mississippi state line. Warren testified that the land was located on the Louisiana side of the line. Margie Kennedy, who lived just over the line in Louisiana, owned this twenty-acre parcel of land.

Margie Kennedy's daughter had married Clifford Jones. Clifford Jones was the brother of Everett Jones. Everett Jones and his wife, Pamela Jones, each owned fifty percent of the shares of common stock in Pallets. Clifford Jones and Gary Lee had initiated the logging operation on Margie Kennedy's twenty-acre parcel of land in November of the previous year. Gary Lee cut and bunched the logs, and Clifford Jones used his 1966 Kenworth truck to haul the logs from his mother-in-law's land. Between November 7 and November 22, 1988, Clifford Jones hauled fourteen loads of hardwood logs to Pallets, which bought all of them. As its name indicated, Pallets made wooden pallets which were used for moving various goods. Pallets would cut the logs into lumber, from which it then constructed the pallets.

Clifford Jones testified at the hearing before the administrative judge that he discontinued his participation in the logging operation on Margie Kennedy's land after November 22, because his '66 Kenworth was too big and too tall to maneuver easily in the woods. Because Gary Lee did not own a truck, Clifford Jones' withdrawal from the logging operation compelled Gary Lee to stop also. During this same period in November, 1988, Julius Hart worked for Pearl River. According to Joe Stringer, the apparent sole owner of Pearl River Forest Products, Inc., Hart had logged for Pearl River for a couple of years until February 24, 1989, when "he just up and quit." Stringer testified that on February 28, 1989, he called Glenn Stogner, Pallets' employee who ran Pallets' scale house, to tell him that Julius Hart no longer worked for Pearl River.

On Monday, March 3, 1989, Julius Hart moved his logging equipment, which consisted of a skidder, a loader, and some saws, onto Margie Kennedy's twenty-acre parcel of land. As a member of Hart's logging crew, Warren participated in the move, but Hart began no logging activity until the next day, Tuesday, March 4, after Clifford Jones, Margie Kennedy's son-in-law, walked the lines with Warren to show him where not to cut. However, Warren also testified on cross-examination that Margie Kennedy had come to her land on the Monday that Hart's crew moved their equipment onto it to show them some timber they could begin cutting while they waited for her son-in-law, Clifford Jones, to flag and to walk the lines. Clifford Jones denied that he had flagged the lines for Hart's crew. He stated that flagging the lines was unnecessary because a creek ran on one side of the land, and another side was fenced. There was no evidence that Clifford Jones visited the Margie Kennedy tract at any other time between Monday, March 13, and Monday, March 20, 1989, the day that Warren was grievously injured.

The following is a synopsis of the loads of hardwood logs which Julius Hart harvested from the Margie Kennedy parcel and delivered to Pallets: March 16, two loads; March 17, three loads; March 20, one load; and March 21, two loads. Thus, Hart delivered to Pallets a total of eight loads of logs which his crew had cut from the Margie Kennedy tract. Pallets purchased all eight loads. Pallets

withheld from Hart's payments for each load the "stumpage" which Hart owed Margie Kennedy as the owner of the hardwood timber. Everett Jones testified that Pallets paid Margie Kennedy for her stumpage at the rate of $6.60 per ton. However, the stumpage for all but the first of these eight loads was divided between Kennedy and her son-in-law, Clifford Jones. Kennedy received all of the stumpage from the first load which Hart delivered to Pallets on March 16. In March of 1989, Clifford Jones received checks from Pallets for his share of the Kennedy stumpage in the total amount of $2,031.

Clifford Jones explained his mother-in-law's largess as her effort to help him support his wife and their three children during a period of extreme financial hardship for his family and him caused primarily by his then failing health and consequent inability to work regularly. Everett Jones employed the same rationale to explain Pallets' retention of Clifford Jones' services from March 4, 1988, until August 16, 1988, and again from January 8, 1989, until sometime after Warren's injury. Both Clifford and Everett Jones corroborated that within these two periods of time, Pallets paid Clifford for two services. First, Clifford Jones brought his Kenworth truck to Pallets' yard where he used it to move chip trailers to and from the chip loader as necessary. Second, while Clifford waited for the next occasion to move a chip trailer with his '66 Kenworth, he would occasionally perform routine repairs to and maintenance of Pallets' trucks which were used to transport the finished pallets. However, Everett Jones testified that his brother received no benefits as a regular employee such as coverage by Pallets' group health insurance plan, but neither did Clifford punch a clock as did Pallets' other employees. Clifford Jones left Pallets' payroll later in 1989 to return to over-the-road truck driving.

From the evidence and testimony contained in the record of the hearing from which the administrative judge derived her ultimate decision, it became apparent that procurers of logs and other raw forest products such as Georgia Pacific required their suppliers from whom they bought logs and other forest products to provide certificates of insurance which vouched for their suppliers' coverage under Mississippi's Workers' Compensation Act. Everett Jones testified that if Pallets foresaw that it would be buying logs from a particular vendor, its policy was to require that vendor to provide it such a certificate of insurance, but its policy did not prevent it from buying a "surprise" load of logs from any logger whose truck drove upon Pallets' scales, provided the load of logs met Pallets' standards. Everett Jones conceded under Warren's counsel's cross-examination that Pallets never inquired of Julius Hart whether he had such a certificate of insurance, even though it bought eight loads of hardwood logs from him between March 16 through 21 in 1989.

## II. Commission's resolution of Warren's claim

As we have noted, Warren filed a petition to controvert and two amended petitions to controvert with the Workers' Compensation Commission to assert his claims for the payment of medical expenses and permanent disability against Pallets, Pearl River, and Georgia Pacific. An administrative judge conducted a hearing on the matter, after which she found that Warren had been injured while cutting wood for Pallets, and citing to several cases, she wrote, "Julius Hart and claimant [Ray Warren] were employees of Pallets and, thus, claimant is entitled to recover workers' compensation benefits as an employee of Pallets." She ordered Pallets, Inc. and Bituminous Casualty Corporation, the insurance carrier, to pay compensation benefits to Warren as follows:

1. Permanent total disability benefits in the amount of $200.00 a week beginning March 20, 1989 and continuing for a period of 450 weeks. There shall be added to each installment of compensation benefits not timely paid the equivalent of ten percent (10%) thereof as provided in Mississippi Code Annotated, Section 71-3-37(5) (1972);

2. Pay for, furnish and provide to claimant [Ray Warren] all reasonable and necessary medical services and supplies as the nature of his injury or the process of his recovery may require as provided in Mississippi Code Annotated, Section 71-3-15 (1972).

The judge then ordered that Warren's claim against Pearl River Forest Products and Georgia-Pacific be denied.

Pallets, Inc. and Bituminous Casualty appealed the decision to the Commission, which affirmed the order of administrative judge. They next appealed to the Circuit Court of Walthall County, which affirmed the Full Commission. In their appeal to this Court, Pallets and Bituminous present but one issue, which we quote exactly as we find it in their brief:

I. The Order of the Commission and the affirmation by the Circuit Court of Walthall, County, Mississippi, granting benefits to the Appellee was not supported by substantial evidence. The Appellee, Ray Warren, was not an employee of the Appellant, Pallets, Inc. at the time of his injury, but was an employee Julius Hart who was an independent contractor and not an employee of the Appellant, Pallets, Inc. Any relationship between Pallets, Inc. and Julius Hart was that of vendor/vendee and not employer/employee.

### III. Analysis and Resolution of the issue

The issue with which this Court must deal is one of law, not of fact, as we shall endeavor to explain in this opinion. Thus, the "standard" standard of review by which an appellate court resolves issues presented in workers' compensation cases is inapplicable. The "standard" standard of review reads as follows:

The standard of review governing an appeal to [an appellate court] from a decision of an administrative agency is that of substantial evidence. Where an order of the Workmen's Compensation Commission is supported by substantial evidence such order will not be reversed.

*Johnson v. Ferguson*, 435 So. 2d 1191, 1194 (Miss. 1983).

However, questions about the existence and enforceability of contracts are questions of law for the courts to answer. *See generally Duke v. Whatley*, 580 So.2d 1267, 1271 (Miss. 1991), in which the Mississippi Supreme Court opined:

A question of law is before the Court in this appeal. What type of agreement did the parties have, and is it such an agreement which can be specifically enforced under the contract and real property laws of

this state? "The judicial task is to view the terms of the document, find their legal meaning, and adjudge their enforceability vel non. The familiar manifest error/substantial evidence rules have no application to our appellate review of such questions."

(citations omitted). More specifically, in *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 199 (Miss. 1988), the Mississippi Supreme Court reiterated that whether an individual was an employee or an independent contractor was "a very elusive question," but nevertheless it was a question of law.

Because this Court finds that the issue to be resolved in the case *sub judice* is a question of law, it adopts the following standard of review to which the Mississippi Supreme Court referred in *Smith v. Jackson Construction Co.*, 607 So. 2d 1119, 1125 (Miss. 1992):

If there is substantial evidence to support the Commission, absent an error of law, this Court must affirm. On the other hand, where the Commission has misapprehended the controlling legal principles, we will reverse, for our review in that event is *de novo.*

We initiate our review of this issue which we have found to be an issue of law by noting that in her order, the administrative judge found that "[t]he principal issue in this cause in whether on March 20, 1989 claimant was an employee of the named defendants within the meaning of the Mississippi Worker's Compensation Act." Later in her order, the administrative judge opined that "[t]o determine whether there existed an employment relationship between [Warren] and Pallets, it is necessary to distinguish between an employee and an independent contractor." She reviewed the statutory definitions of employee and independent contractor[1] and applied the "control test" and the" relative nature of the work test" to the facts of this case to find "that on March 20, 1989, Julius Hart and claimant [Warren] were employees of Pallets and, thus, claimant [Warren] is entitled to recover workers' compensation benefits as an employee of Pallets." The "control test" and the" relative nature of the work test" are two tests to which the Mississippi Supreme Court resorts in those cases where the issue is whether the claimant was an independent contractor or an employee. *See, e. g., Brown v. E. L. Bruce Co.*, 253 Miss. 1, 175 So. 2d 151, 154 (1965) (stating that the various tests enumerated in our previous opinions are simply methods to be used as an aid in determining whether or not the contractor was an employee, an agent, or a person engaged in an entirely different business, the services of which are contracted to another as the services of an independent contractor.)

The heart of Pallets' argument to support its position on this issue is that "[t]he record is clear that Julius Hart never established a relationship with the Appellant, Pallets, Inc., to establish an employment relationship." Not even Warren argues that he was Pallets' direct employee whom Pallets paid. Indeed the evidence is that Warren was Julius Hart's employee whom Hart paid in cash every Friday at the rate of $60.00 per day. Thus, for Warren to prevail before us, he must demonstrate that there was a contract of some sort between Pallets and Hart. If there was such a contract between them, then our task would become to determine whether Hart functioned as an independent contractor or, instead, as Pallets' employee.

"Contract" is the operative word in Section 73-3-3, both (d) and (r). Without a contract a person cannot be an independent contractor, and, for that matter, neither can a person be an employee without a contract. *See* Section 71-3-3(d), quoted in n. 2 of this opinion. As defined in Restatement

(Second) Contracts § 3: "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Among the definitions of the term "contract" found in Black's Law Dictionary is the following: "The writing which contains the agreement of parties, with the terms and conditions, and which serves as a proof of the obligation." *Black's Law Dictionary* 322 (6th ed. 1990). Of course, a contract, especially one of employment, can be oral as well as written. *See Landry v. Moody Grishman Agency, Inc.,* 254 Miss. 363, 181 So.2d 134, 139 (1965) (holding that even though a contract of employment was not written, it was a contract nevertheless).

In short, with no contract, there can be no relationship between an employee and a potential employer to which to apply either the control test or the relative nature of the work test. Therefore, before either the control test or the relative nature of the work test can be applied to the facts as established by the evidence in the case *sub judice*, we must first determine whether there was a contract between Pallets and Julius Hart to which to apply them. If there was no contract between them, then the administrative judge erred when she applied these two tests to *create* a relationship of employer -- employee between Pallets and Hart, on whose logging crew Warren worked as a sawyer.

This Court must note that there was substantial evidence to support the following facts: In November, 1988, Margie Kennedy had begun to market the timber which grew on her twenty-acre parcel of land. Her son-in-law, Clifford Jones, and Gary Lee harvested and sold several loads of hardwood logs to Pallets, in return for which Pallets paid Kennedy for her stumpage and the balance of the purchase price to Jones and Lee. These facts establish a contract for the purchase and sale of Kennedy's timber to Jones and Lee, who were then at liberty to sell the timber to Pallets, Pearl River, Georgia Pacific, or any other purchaser whom they chose. The only checks which Pallet issued payable to Clifford Jones in the month of November, the only month during which he participated in the harvesting of Kennedy's timber, indicated that they were for "logs." None of these checks were marked for "hauling" or any other service by Clifford Jones to Pallets.

After Lee and Jones had hauled and sold fourteen loads of hardwood logs to Pallets between November 7 and 18, 1988, Jones ended his participation in harvesting his mother-in-law's timber because his 1966 Kenworth truck was not suited to maneuvering a log trailer in the woods. Because Lee owned no truck with which to haul the logs which he cut and bunched with his skidder, Clifford Jones' departure from the project compelled Lee also to abandon further participation in the project. Almost four months later, Hart, for whom Warren was already working, began to harvest Kennedy's timber under the same terms and conditions as had Jones and Lee the previous November. From March 16 through 21, 1989, Hart hauled eight loads of hardwood logs from the Kennedy parcel of land to Pallets, which bought all eight. Stumpage for the first load was paid entirely to Kennedy, the stumpage from the remaining seven loads was so divided between Kennedy and her son-in-law that he received a total of $2,031. Just as the evidence for the period from November 7 through 18, 1988, established a contract of purchase and sale between Kennedy and Jones -- Lee, so does the evidence for the period from March 16 through 21, 1989, establish another contract of purchase and sale between Kennedy and Hart. The relationship of buyer-seller, or vendor-vendee, is excluded from the application of the workers' compensation act.[(2)]


Of course, there can also be an employer-employee relationship in addition to a vendor-vendee

relationship between the claimant and the entity against whom the claim for benefits is lodged. In the case *sub judice*, there is absolutely no evidence of any contract of employment between Pallets and Julius Hart, whether written or oral. Because there was no evidence of such contract or agreement, between Pallets and Julius Hart, Ray Warren's employer, there can be no relationship between Pallets and Hart to which to apply either the control test or the relative nature of the work test to determine whether Hart was Pallets' employee or whether Hart was instead an independent contractor. It is error to use the two tests to create the relationship on which they are only intended to operate for the purpose of ascertaining the nature of the relationship, *i. e.*, employee or independent contractor.

After Warren was injured on March 20, 1989, Section 71-3-5 of the Mississippi Code was amended to include the following provision:

Any purchaser of timber products shall not be liable for workers' compensation for any person who harvests and delivers timber to such purchaser if such purchaser is not liable for unemployment tax on the person harvesting and delivering the timber as provided by United States Code Annotated, Title 26, Section 3306, as amended.

Miss. Code Ann. 71-3-5. (Rev. 1995). Neither Pallets nor Warren attempt to invoke this amendment to support either of their positions on this issue, perhaps because it was not in effect on March 20, 1989, and we refer briefly to it only to demonstrate our awareness of it. Our comments about its relevancy to this issue would be pure dicta, but Internal Revenue Service Regulation 71-274, issued in 1971 for instruction about who were such employees for whom the timber purchaser would be liable for the payment of unemployment taxes, requires a contractual arrangement other than purchase and sale between the purchaser and the supplier of the timber products on which to predicate the purchaser's liability for the payment of the federal unemployment tax. Thus, our resolution of this issue based on the utter lack of evidence of any contractual obligation between Pallets, the purchaser, and Julius Hart, the supplier, seems consistent with the above quoted provision of Section 71-3-5.

### IV. Summary

Warren has not cross-appealed to challenge that part of the Full Commission Order which denied his claim against Pearl River, its workers' compensation insurance carrier, Georgia Casualty & Surety Company, and Georgia Pacific. Thus this Court affirms that portion of the Full Commission Order which denied Warren's claim against Pearl River, Georgia Casualty & Surety Company, and Georgia Pacific. However, this Court concludes that the Commission erred as a matter of law when it affirmed the administrative judge's order in which she found that both Hart and Warren were employees of Pallets. The Commission erred as a matter of law because there was no contract of any sort between Pallets and Hart. The evidence only established that there was a vendee-vendor relationship between them, and, as we have noted, Section 71-3-5 provides that the workers' compensation act does not apply to this relationship. Therefore, the order affirming decision of the Workers' Compensation Commission entered by the Walthall County Circuit Court and the Full Commission Order which affirmed the order of administrative judge are affirmed in so far as they deny Warren's claim against Pearl River, Georgia Casualty & Surety Company, and Georgia Pacific

but are reversed in so far as they granted Warren's claim against Pallets and Bituminous Casualty Corporation, and judgment is here rendered for Pallets, Inc., and Bituminous Casualty Corporation, Pallets' workers' compensation insurance carrier.

**THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT AND THE FULL COMMISSION ORDER OF THE WORKERS' COMPENSATION COMMISSION IS AFFIRMED WITH REGARD TO PEARL RIVER FOREST PRODUCTS, GEORGIA CASUALTY AND SURETY COMPANY, AND GEORGIA PACIFIC CORPORATION AND REVERSED AND RENDERED WITH REGARD TO PALLETS, INC., AND BITUMINOUS CASUALTY CORPORATION. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEES.**


**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

1. The portion of Section 71-3-3(d) relevant to our purpose defines "employee" as follows:


"Employee" means any person, including a minor whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied, provided that there shall be excluded therefrom all independent contractors . . . .


Miss. Code Ann. § 71-3-3(d) (Rev. 1995).


Section 71-3-3(r) relevant to our purpose defines "independent contractor" as follows:


"Independent contractor" means any individual, firm or corporation who contracts to do a piece of work according to his own methods without being subject to the control of his employer except as to the results of the work, and who has the right to employ and direct the outcome of the workers independent of the employer and free from any superior authority in the employer to say how the specified work shall be done or what the laborers shall do as the work progresses, one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains the result.


Miss. Code Ann. § 71-3-3(r) (Rev. 1995).

2. Section 71-3-5 of the Mississippi Code of 1972 excludes such relationships. The relevant part reads:


This chapter shall not be applicable to a mere direct buyer-seller or vendor-vendee relationship where there is no employer-employee relationship as defined by Section 71-3-3, . . . .

Miss. Code Ann. 71-3-5.